HALL, Appellant,

v.

**FORT FRYE LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, Appellee.**

[Cite as *Hall v. Ft. Frye Loc. School Dist. Bd. of Edn.* (1996), 111 Ohio App.3d 690.]

Court of Appeals of Ohio,
Fourth District, Washington County.

No. 95CA16.

Decided June 14, 1996.

692

*Handelman & Kilroy* and *Robert K. Handelman; Barkan & Neff* and *Sanford A. Meizlish,* for appellant.

*Theisen, Brock, Frye, Erb & Leeper* and *John E. Erb,* for appellee.

HARSHA, Judge.

Bradley J. Hall appeals from a judgment of the Washington County Court of Common Pleas granting summary judgment for the Fort Frye Local School District Board of Education. Appellant asserts three errors for review:

"1. The trial court erred in finding that the appellee, Fort Frye Local School District, is entitled to political subdivision immunity where the appellant has alleged and offered evidence of wanton, willful, and reckless misconduct, including Fort Frye's knowledge of the specific risk of serious bodily injury posed by the exposed sprinkler head and its failure to repair or replace it despite repeated warnings.

"2. The lower court erred in holding that *Goodin v. Alexander Local School District* requires, as a matter of law, granting appellee's motion for summary judgment on the issue of political subdivision immunity where in *Goodin* other safety measures and training negated the allegations of recklessness [while] in the case at bar Fort Frye failed to take action to eliminate or reduce the known risk of injury.

"3. The trial court erred in immunizing the Fort Frye School District from liability from suit by its injured student for its negligence in maintaining a practice field, since R.C. 2744.03(A)(5) only grants immunity where the acts are truly discretionary and R.C. 2744.02(B)(2) and (B)(4) provide that political subdivisions are not immune from negligence on the grounds used in connection with the performance of their governmental function, in this case, public edu-

cation. Maintenance of the practice field does not involve the exercise of 'judgment or discretion' as contemplated by R.C. 2744.03(A)(5)."

This case arises out of an injury appellant received while practicing as a member of the Fort Frye High School football team. On September 30, 1987, appellant damaged his right knee when he stepped on an exposed sprinkler head on the high school's practice football field. Appellee school district maintained two football fields for its student athletic programs, a stadium used for games and the practice field located adjacent to the stadium. Both fields utilized a below-ground irrigation system. The irrigation system included brass sprinkler heads, approximately three inches in circumference, which were placed at various intervals throughout the field. The sprinkler heads on the practice field varied in depth; some were recessed three to four inches below the surface, some were one to two inches below the surface, and others were flush with the playing field.

The school used the irrigation system throughout the summer until football practice began in August. In some instances, school personnel would cover the sprinkler heads with sand or dirt after they ceased using them in August. As football practices continued, however, sprinkler heads became exposed on the practice field. Rain would also cause the sand or dirt to erode, further exposing the sprinkler heads and leaving a depressed area around them.

Prior to appellant's injury, members of the school's athletic department warned appellee about potential dangers to the student athletes posed by exposed sprinkler heads on the practice field. Despite these warnings, appellee did not place covers on top of the sprinkler heads and decided not to replace the entire irrigation system.

After suffering his injury, appellant filed a two-count complaint against the school board. The first count alleged that appellant's injury was caused when he caught his foot in a depression that resulted from improper maintenance of the sprinkler system. The second count alleged that the school's failure to correct, remedy, or repair the latent dangerous condition of the sprinkler-head attachments constituted wanton or willful misconduct. The school answered by asserting, *inter alia,* the affirmative defense of political subdivision immunity pursuant to R.C. Chapter 2744.

Appellee later filed a motion for summary judgment on the ground that it was immune from tort liability pursuant to the provisions of R.C. 2744.03(A)(5). That is, appellee contended that the manner in which it maintained and used the football practice field involved a high degree of discretion and judgment regarding the use or nonuse of its equipment, supplies, facilities, and other resources. Appellant countered that the school's judgment and discretion regarding the maintenance of the practice field were exercised in a wanton or reckless manner, thus imposing liability consistent with the express exception to R.C. 2744.03(A)(5).

Finally, appellee argued in its reply memorandum that it was also entitled to immunity pursuant to the provisions of R.C. 2744.03(A)(3) because the school's decision not to replace or renovate the irrigation system was part of the school's overall discretionary policymaking and budgeting process.

The trial court's decision found that appellee was entitled to complete immunity pursuant to R.C. 2744.03(A)(5). However, the trial court's judgment entry states that appellee is entitled to immunity pursuant to "Ohio Revised Code Chapter 2744." Therefore, appellee urges this court to affirm the trial court's judgment if we find that appellee is entitled to immunity under either section. See *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 174; *Redd v. Springfield Twp. School Dist.* (1993), 91 Ohio App.3d 88, 91, 631 N.E.2d 1076, 1078, fn. 1.

■ The Supreme Court of Ohio has recognized that the availability of statutory immunity raises a purely legal issue that is properly determined by a court prior to trial. *Nease v. Med. College Hosp.* (1992), 64 Ohio St.3d 396, 400, 596 N.E.2d 432, 435. On the other hand, once an immunity defense is deemed *available* as a matter of law, its applicability to the actions of the parties becomes fact-specific, *e.g.*, the negligence and recklessness issues in this case.

In reviewing a lower court's decision granting a motion for summary judgment, appellate courts must follow the standard contained in Civ.R. 56(C), which provides as follows:

" * * * Summary judgment shall be rendered forthwith if the * * * evidence * * * timely filed in the action, show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence * * * and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence * * * construed most strongly in his favor. * * * "

■ An appellate court must independently review the record to determine if summary judgment was appropriate. Therefore, an appellate court affords no deference to the trial court's decision while making its own judgment. *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809, 619 N.E.2d 10, 11; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411–412, 599 N.E.2d 786, 787–788.

■ Generally, the party asserting immunity as an affirmative defense has the burden of proving that defense by a preponderance of the evidence at trial. *Giles v. Savannah* (Mar. 26, 1993), Ashland App. No. CA-1034, unreported, 1993 WL 95437. In the context of summary judgment, a party raising an immunity

defense must present evidence tending to prove the underlying facts upon which the defense is based. *Evans v. S. Ohio Med. Ctr.* (1995), 103 Ohio App.3d 250, 255, 659 N.E.2d 326, 329. See, also, *Vance v. Jefferson Area Local School Dist. Bd. of Edn.* (Nov. 9, 1995), Ashtabula App. No. 94-A-0041, unreported, 1995 WL 804523. The plaintiff, as the nonmoving party, must then present evidence showing the existence of a genuine issue as to these material facts. *Id.*

We will first address the arguments raised in appellant's third assignment of error. Appellant contends that appellee's maintenance of the high school practice football field does not require the exercise of such judgment or discretion as intended by R.C. Chapter 2744; thus, appellee is subject to liability for mere negligence. For the reasons that follow, we agree.

The trial court granted appellee's motion for summary judgment after finding that appellee was entitled to political subdivision immunity. The extent of a political subdivision's tort liability is determined by R.C. Chapter 2744. In general, the statutory scheme sets up a general grant of immunity, R.C. 2744.02(A), with enumerated exceptions that give rise to liability under R.C. 2744.02(B). In a suit alleging liability under these exceptions, the political subdivision may assert defenses and immunities outlined in R.C. 2744.03.

R.C. 2744.02(A)(1) states that "except as provided in division (B) of this section, a political subdivision is *not liable* in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental * * * function." (Emphasis added.)

R.C. 2744.01(F) includes school districts within the definition of a "political subdivision." The definition of "governmental function" includes the design, construction, reconstruction, renovation, repair, maintenance and operation of a playfield. R.C. 2744.01(C)(2)(u). Therefore, appellee school board's maintenance of the high school practice football field constitutes the performance of a governmental function by a political subdivision.[1]

As noted above, the general grant of political subdivision immunity found in R.C. 2744.02(A) is subject to the exceptions contained in R.C. 2744.02(B). In this case, the applicable exception is subsection (4), which states:

"[P]olitical subdivisions *are liable* for injury, death, or loss to persons or property that is caused by the *negligence* of their employees and that occurs

---

1. Appellant's third assignment of error states that the governmental function involved in this case is appellee's provision of a system of public education. See R.C. 2744.01(C)(2)(c). In any event, the result in this case would be the same under either scenario.

*within or on the grounds of buildings* that are used in connection with the performance of a governmental function[.]" (Emphasis added.)

We agree with the appellate courts of this state that have recognized that R.C. 2744.02(B)(4) applies to the maintenance of school property. *Doe v. Jefferson Area Local School Dist.* (Aug. 15, 1994), 97 Ohio App.3d 11, 646 N.E.2d 187; *Zellman v. Kenston Bd. of Edn.* (1991), 71 Ohio App.3d 287, 593 N.E.2d 392; *Spotts v. Columbus Pub. Schools* (Apr. 19, 1990), Franklin App. No. 89AP–1003, unreported, 1990 WL 48900. Therefore, we hold as a matter of law that liability under this section may potentially be imposed upon appellee for the maintenance of the practice field.

However, this potential liability is expressly limited by the defenses set forth in R.C. 2744.03(A)(3) and (5), which provide:

"(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the *discretion* of the employee with respect to *policy-making, planning,* or *enforcement powers* by virtue of the duties and responsibilities of the office or position of the employee.

" * * *

"(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the *exercise of judgment or discretion* in determining *whether to acquire,* or *how to use, equipment,* supplies, materials, personnel, *facilities,* and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." (Emphasis added.)

Since we have determined that liability under R.C. 2744.02(B)(4) may potentially be imposed upon appellee for the maintenance of the practice field, appellee will be liable for appellant's injuries if two conditions are met. First, appellant must prove that the maintenance of the property was conducted in a negligent manner and, second, appellee cannot restore immunity pursuant to R.C. 2744.03(A)(3) or (5).

■ We look first to the issue of whether appellee's maintenance of the practice field was performed in a negligent manner.[2] The evidentiary materials submitted by the parties reveal the following pertinent facts.

---

**2.** Both parties filed several affidavits with the trial court. Appellee also filed the depositions of appellant and school superintendent Ron Curry. Appellant did not file any depositions, although he relied upon attached excerpts from the depositions of football coach Ralph Coffman and school maintenance employee Bill Bolden. In its appellate brief, appellee relies upon excerpts from the Coffman deposition that were not attached to its brief or included in the excerpts previously provided by appellant. Generally, documents such as deposition

Appellant testified at his deposition as follows:

"Q. Were they [the sprinkler heads] ever filled or covered or marked with chalk or anything in any way?

"A. Nothing.

"Q. There was never any dirt or sand put around them?

"A. No, never."

Appellant continued:

"Q. Is is [sic] your testimony that those sprinkler heads had never had any chalk put around them—

"A. Right.

"Q. —or little flags?

"A. Right.

"Q. Have they ever been covered up—

"A. No.

"Q. —with sand or dirt or anything?

"A. No."

George Hennessy, school athletic director at the time of appellant's injury, stated in his affidavit:

"On occasion, sand or dirt would be placed over the sprinkler heads to protect the athletes using the field. However, often the sprinkler heads were exposed because they had not been covered, or as a result of erosion, use of the field, or water pooling at the sprinkler head. Frequently depressions would develop around the sprinkler heads. On numerous occasions, I would find exposed sprinkler heads during inspections of the practice field."

School maintenance specialist Bill Bolden confirmed such measures by testifying at his deposition:

"Q. I gather you—were you, yourself, ever asked to do anything to improve or correct any potential problems with the sprinkler bases?

---

excerpts that are not sworn, certified, or authenticated by affidavit have no evidentiary value and may not be considered either by this court or the trial court. *Putka v. Parma* (1993), 90 Ohio App.3d 647, 649, 630 N.E.2d 380, 381; *Mitchell v. Ross* (1984), 14 Ohio App.3d 75, 75, 14 OBR 87, 88, 470 N.E.2d 245, 246. However, since there was no timely objection to the form in which these excerpts were provided (to the extent they were provided at all), the parties have waived any error for purposes of this appeal. *Gaumont v. Emery Air Freight Corp.* (1989), 61 Ohio App.3d 277, 287, 572 N.E.2d 747, 753; *Rodger v. McDonald's Restaurants of Ohio, Inc.* (1982), 8 Ohio App.3d 256, 258, 8 OBR 347, 349, 456 N.E.2d 1262, 1265, fn. 7.

"A. No.

"Q. Do you know of any efforts that were made?

"A. The only thing that was ever done is they were covered back up with dirt after they were used, or with sand.

"Q. Who had the responsibility to cover them up after they were used?

"A. The maintenance department or—I don't know. Ever who was there, I guess.

"Q. So, after a particular sprinkler head was used, you were to—someone from the maintenance department was to take dirt and cover up the hole?

"A. Well, we didn't always do it. The ball players did it or we did it. Someone did it.

"Q. So it sort of—there was no—no single group had responsibility for it?

"A. No.

"Q. And do you know whether in every case it was done?

"A. No.

"Q. And I gather there was no standing orders in writing that, after a sprinkler head was used, the holes should be covered up with dirt?

"A. No."

Finally, Ron Curry, school superintendent at the time of appellant's injury, testified at his deposition:

"Q. But you weren't aware of any consideration or concern Mr. Hennessy had about dangers to the players as a result of this [sprinkler] system?

"A. No. I didn't feel there was a danger or concern about that since the holes were covered with sand after—before season started. So, to me, the best thing to have in the hole was sand or dirt, which is what is there now."

Construing this evidence most strongly in favor of appellant, we believe that a genuine issue exists as to whether appellee negligently maintained the Fort Frye High School practice football field. The evidence in the record indicates that the school district either made no effort at all or a haphazard effort, at best, to maintain the practice field. Since reasonable minds could come to different conclusions with regard to a breach of the duty to maintain the field, appellee was not entitled to summary judgment.

■ However, our inquiry in this matter is not over yet. Next, we must address whether the maintenance of a political subdivision's property involves the type of judgment or discretion as contemplated by R.C. 2744.03(A)(3) or (5). As indicated above, we treat this issue as being purely legal in nature and for the

following reasons, we hold that it does not. Immunity operates to protect political subdivisions from liability based upon discretionary judgments concerning the allocation of scarce resources; it is not intended to protect conduct which requires very little discretion or independent judgment. The law of immunity is designed to foster freedom and discretion in the development of public policy while still ensuring that implementation of political subdivision responsibilities is conducted in a reasonable manner. *Marcum v. Adkins* (Mar. 28, 1994), Gallia App. No. 93CA17, unreported, 1994 WL 116233.

 In *Hallett v. Stow Bd. of Edn.* (1993), 89 Ohio App.3d 309, 313, 624 N.E.2d 272, 274, the court recognized that the very structure of R.C. Chapter 2744 implies that the General Assembly did not intend to relieve political subdivisions from liability for all negligent actions of their employees. Since these immunity statutes generally provide that " 'you're not liable,' then say 'you are liable' and finally say 'you're not,' " it is clear that the exceptions to liability in R.C. 2744.03 must be read more narrowly than the exceptions to nonliability in R.C. 2744.02(B) in order for the legislative structure to make any sense at all. *Id.*, quoting *Stuckey v. Lawrence Twp. Bd. of Trustees* (Aug. 24, 1992), Stark App. No. 8806, unreported, 1992 WL 214485 (Milligan, J., dissenting). In other words, the defenses and immunities of R.C. 2744.03 cannot be read to swallow up the liability provisions of R.C. 2744.02(B) so as to render them nugatory.

 With that background in mind, we will now consider the specific issue of whether appellee's maintenance of the practice field involves the type of judgment or discretion intended to be protected by the political subdivision immunity statutes.

*Vance, supra,* considered this issue in the context of an injury occurring on a school playground. After colliding with a fellow classmate, a student struck her head against a steel post holding a basketball hoop. The main issue before the appellate court was whether the school board was liable for failing to provide padding on the steel support pole. The court first reviewed the applicable political subdivision immunity provisions outlined above. As a result, the court concluded:

"When R.C. 2744.02(B)(4) and R.C. 2744.03(A)(5) are read in concert, it becomes apparent that, in regard to governmental buildings or facilities, the intent of the General Assembly was that a political subdivision can only be held liable for damages stemming from negligent maintenance." *Id.*

The court reasoned that decisions concerning the construction of governmental buildings or facilities clearly falls within the R.C. 2744.03(A)(5) exception to liability concerning "how to use" resources. The R.C. 2744.02(B)(4) exception to nonliability can be applicable only to the maintenance of the building or facility

after it has been constructed. *Id.* The decision to "build or not" is immunized as a matter of law because of its policy/discretionary nature.

Thus, appellee's initial decision in our case to purchase and install the irrigation system clearly involved the exercise of protected judgment or discretion, for which appellee is entitled to immunity pursuant to the provisions of R.C. 2744.03(A)(5), subject of course to its recklessness exception.

However, the maintenance of the school's irrigation system by appellee's employees is a totally separate matter that does not involve the exercise of such judgment or discretion. The decision to allocate resources, *i.e.,* "how to use, equipment * * * or facilities," has been made and is immunized. However, once that policy is put into effect, appellee's maintenance procedures must be performed in a reasonably safe manner. If the evidence establishes that appellee negligently maintained the irrigation system through arbitrary and random attempts to cover the sprinkler heads, liability may be imposed pursuant to R.C. 2744.02(B)(4).

Our decision in this case is supported by other appellate decisions as well. One of the earliest cases to recognize the importance of distinguishing between design/operation policy decisions and maintenance activities was *Kettering ex rel. Moser v. Kettering* (Jan. 29, 1988), Montgomery App. No. 10596, unreported, 1988 WL 10121, reversed on other grounds (1988), 37 Ohio St.3d 233, 525 N.E.2d 490. The court of appeals determined that the city's decision to erect a sound barrier involved the exercise of judgment and discretion while the enforcement of posted time restrictions did not. The court of appeals reasoned that "[t]he case before us does not raise a question of park maintenance or repair but a question of park design and operation. Decisions regarding the design and operation procedures for a public park require a great deal of budgeting, management and planning. These are the type[s] of acts that R.C. 2744.03(A)(5) intended to shield[.]"

This distinction was also recognized in *Vallish v. Copley Bd. of Edn.* (Feb. 3, 1993), Summit App. No. 15664, unreported, 1993 WL 27494, overruled in *Hallett v. Stow Bd. of Edn.* (1993), 89 Ohio App.3d 309, 624 N.E.2d 272, in a dissenting opinion by Judge Cook prior to her election to the Supreme Court of Ohio. The *Vallish* majority's decision determined that a negligent sidewalk maintenance claim was subject to summary judgment based on R.C. 2744.03(A)(5) because the decision to repair the sidewalk involved the judgment of the school district regarding the use of equipment, supplies, materials, and personnel. In her dissenting opinion, however, Judge Cook stated:

"[T]he 'A(5)' exception contemplates affording immunity for decisions such as how many firetrucks respond to an alarm, how many officers with how much training are assigned to a neighborhood, challenges to snowplowing equipment and personnel on the job during a snowstorm, etc. Whether, when and how to

comply with the duty to keep premises in repair is not the sort of judgment contemplated by the 'A(5)' exception. Political subdivisions must defend this sort of claim on a negligence basis, not immunity." *Vallish* (Cook, J., dissenting).

Judge Cook's dissenting opinion was later adopted by the court when it overruled *Vallish* in *Hallett,* 89 Ohio App.3d at 314, 624 N.E.2d at 275. In *Hallett,* a spectator at a high school football game sued the board of education after she fell in a hole at the high school's stadium. The evidence indicated that when school maintenance employees removed litter from the area where plaintiff fell they were also instructed to inspect the premises for hazards.[3] The court consequently held that "[i]n our view, however, neither R.C. 2744.03(A)(3), with its emphasis on 'discretion,' nor R.C. 2744.03(A)(5), with its emphasis on 'judgment or discretion,' relieves a political subdivision of the type of negligence alleged in this case." *Id.* at 314, 624 N.E.2d at 275.

This court also adopts the reasoning contained in Judge Harper's concurring opinion in *Mackulin v. Lakewood Bd. of Edn.* (Mar. 11, 1993), Cuyahoga App. No. 61808, unreported, 1993 WL 69555. The plaintiff in that case fell at an ice skating rink operated by the school district. She tripped after a group of people had completed skating but before surface imperfections on the ice were repaired. Unlike *Hallett* above, the school in this case made a policy decision not to resurface the ice before plaintiff began skating. The school argued that this decision involved the school's exercise of judgment and discretion concerning the use of its equipment, supplies, materials, personnel, facilities, and other resources. However, as Judge Harper stated:

"[T]here is a difference between the decision to create something, the decision on how to use the thing created and the decision to maintain it after it has been created. The political subdivision's decision to build a skating rink * * * and its further decision on how to use the rink after it was created is the judgment the statute immun[izes] from liability.

"The statute does not grant them judgmental immunity from the maintenance of the rink."

In accord with this rationale, the court in *Field v. McDonald Bd. of Edn.* (Sept. 30, 1994), Trumbull App. Nos. 93–T–4901 and 93–T–4906, unreported, 1994 WL 638189, was faced with the alleged negligence of a school employee failing to turn on a stairwell light. According to the court, the record clearly indicated that a

---

3. The court noted that the case did not involve a policy decision by the school not to maintain the area. *Id.* at 313, 624 N.E.2d at 274. In our view, such a decision would not be immunized. To do so would clearly foster the perpetuation of dangerous conditions. Entities that took no corrective action would be better off than those that made attempts at improving safety, however feeble.

light was actually located in the staircase area where the plaintiff fell; however, the light was turned off at the time of the accident. Therefore, "this was not a question of whether to acquire or how to use facilities. The decision to install a light in the staircase area had already been made. Clearly, the issue was whether or not the school system employee * * * acted negligently by not turning on the light." *Id.*

The reasoning of these appellate decisions supports our conclusion that a school's maintenance of its property does not involve the type of judgment or discretion contemplated by R.C. 2744.03(A)(3) or (5). We believe that appellee's decisions to create the practice field with the irrigation system and to use that field for its high school football practices are vastly different from the decision to subsequently maintain the practice field. *Mackulin, supra.* Because of those differences, liability may be imposed only for the negligent implementation of its maintenance decisions.

We find as a matter of law that the maintenance of a political subdivision's property, as opposed to decisions concerning the acquisition and utilization of such property, do not involve a sufficient amount of budgeting, management, or planning to bring such decisions into the purview of R.C. 2744.03(A)(3) or (5). *Kettering, supra.*

Since the evidence in the record, construed most strongly in favor of appellant, raises a genuine issue as to whether appellee negligently maintained the practice football field, and, since the maintenance of school property does not involve the exercise of judgment or discretion as intended by R.C. 2744.03(A)(3) or (5), as a matter of law, the trial court erred in granting appellee summary judgment. Appellant's third assignment of error is sustained.

In light of our disposition of this assignment of error, we find appellant's first and second assignments of error to be moot pursuant to App.R. 12(A)(1)(c). The judgment of the trial court is reversed, and the cause is remanded to the lower court for proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

PETER B. ABELE, P.J., and KLINE, J., concur.