The plaintiff in this case, Jeffrey Lutz, was arrested on multiple criminal charges as the result of a single car accident and subsequent events. After pleading no contest to failure to control his vehicle, Lutz was acquitted of the remaining charges. He subsequently filed a civil action in the Athens County Court of Common Pleas against the arresting officers and their employer, Hocking Technical College. After the trial court denied their motion for summary judgment, the defendants appealed and assigned the following error:
 "THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANTS-APPELLANTS' MOTION FOR SUMMARY JUDGMENT BASED UPON THE DEFENSES OF QUALIFIED IMMUNITY OR STATUTORY IMMUNITY SET FORTH IN OHIO REVISED CODE CHAPTER 2744."
We affirm in part and reverse in part. The trial court correctly denied R.C. Chapter 2744 immunity to the individual officers. However, the trial court erred in failing to find appellant Hocking Technical College immune from liability on the appellee's state-law causes of action. We also conclude that issues concerning the individual officers' entitlement to qualified immunity on the appellee's federal claims are not properly before us on this appeal.
 I. Background
Plaintiff-Appellee Jeffrey Lutz filed a five-count complaint against Hocking Technical College (the "college"), Mark Kollar, Joseph Robinson, and Robert L. Green.[1] Appellants Kollar, Robinson, and Green were police officers of the college at the time of the events giving rise to the appellee's complaint. The counts include: (1) assault and battery, (2) false arrest, (3) malicious prosecution, (4) constitutional violations actionable under Section 1983, Title 42, U.S. Code, and (5) employer liability.
These claims are predicated in part on earlier criminal prosecution of the appellee in the Athens County Municipal Court, where appellant Kollar charged the appellee with disorderly conduct, resisting arrest, and failure to control a motor vehicle. The resisting charge was reduced to disorderly conduct and the original disorderly conduct charge was reduced to a minor misdemeanor. The appellee pled no contest to the failure to control his motor vehicle and proceeded with a trial before the court on the remaining charges, whereupon he was acquitted.
Following his acquittal, Mr. Lutz commenced his civil action in the Athens County Court of Common Pleas. The appellants answered the complaint, claiming: (1) qualified immunity, i.e. their conduct was in good faith, upon probable cause, and without malice or in a wanton or reckless manner, (2) statutory immunity, and (3) prosecution upon advice of legal counsel. Following discovery, the appellants filed motions for summary judgment under Civ.R. 56. The motions argued that, upon the facts presented and construed most favorably to the plaintiff-appellee, the appellants' conduct was protected by both qualified immunity and statutory immunity, being in the exercise of a "governmental function" within the purview of Chapter 2744 of the Revised Code. The trial court overruled the appellants' motion except as to the Section 1983, Title 42, U.S. Code claim against the college based on respondeat superior
liability, which is not at issue on this appeal. See, generally, Monell v. State Dept. of Social Servs. (1978),436 U.S. 658, 99 S.Ct. 2018, 56 L.Ed.2d 611 (no public entity liability for Section 1983 is available based on respondeatsuperior). The court favored the parties and this court with a ten-page decision and judgment, from which the appellants appeal.
 II. Evidence Presented On Summary Judgment.
Appellee is an instructor at the Tri-County Joint Vocational School who went to the Quality Inn after work on March 1, 1996, around 5 p.m. Teachers at the vocational school frequently gathered at the Quality Inn, which is next door to the school, for drinks and socializing on Friday afternoons and evenings. The appellee ate some food at the restaurant and drank four or five beers over a period of several hours. He left the Quality Inn to drive home at around 10:30 p.m. Customers at the inn testified in sworn affidavits that the appellee showed no signs of intoxication at that time. In his deposition testimony, the appellee testified that his truck, which had a frost-covered windshield, skidded on some ice, went left of center, and crashed into a light pole near the vocational school. The collision knocked off the light, caused extensive damage to the truck, and injured the appellee's head. The appellee later discovered he was bleeding.
A pizza delivery driver, who witnessed the single-car accident, approached the appellee's car. The witness noticed the appellee slumped over the steering wheel, detected a strong odor of alcohol, and noted that his speech was slurred. She attended to his bleeding head. Appellee determined that he had no broken bones and claimed he needed no medical attention. He exited the car and went to the vocational school adjacent to the Quality Inn, which was a few hundred yards from the collision site.
The appellee denies that he was unsteady on his feet or that his speech was slurred, and denies that he was under the influence of alcohol at the time of the accident. The appellee opened his classroom with his key and attended to his wound from a first-aid kit in the washroom. He called his wife, Tammy Lutz, and advised her of the accident; she told the appellee that she would come to the school. In an affidavit submitted in opposition to summary judgment, Ms. Lutz testified that the appellee's speech was not slurred during this phone conversation.
Meanwhile, a passing motorist stopped at the Quality Inn to inform the police of the accident. Appellant Kollar, who was on routine patrol for the college, arrived on the scene in response to a call from the Quality Inn. The appellee's car was still smoking. The officer noticed the car, saw the broken windshield, and radioed for medical assistance when advised by the eyewitness of the injury to the appellee and the direction in which he "staggered off." The eyewitness did not inform Officer Kollar of the smell of alcohol she had detected from the appellee; however, because of the late hour and the close proximity of the Quality Inn to the accident, Officer Kollar suspected that the vehicle's driver was possibly under the influence of alcohol. The officer went to the school, where he observed the appellee placing a bandage on his head. This man fit the description of the driver. There is no dispute that the appellee identified himself to the officer as the driver of the truck and that he admitted to consuming beer during the previous several hours. What happened following appellant Kollar's arrival at the appellee's classroom is the subject of sharp dispute.
 A. Appellants' Affidavit Testimony
Approximately ten minutes after the appellee left the accident scene, Kollar found the appellee in a classroom at the Tri-County Vocational School. The high school is outside the jurisdiction of Kollar's employer, the Hocking Technical College. The appellee was applying the bandage to his bleeding head. The appellee went to the door, saw the officer, and allowed him to enter. At that point, the appellee claimed he was all right and admitted driving the truck that hit the pole. Kollar claims that the appellee had slurred speech, bloodshot eyes, and a smell of alcohol. Accordingly, Kollar determined that the appellee was under the influence of alcohol. When asked to accompany him to the scene of the collision, the appellee refused. Kollar claims that the appellee cursed him and grabbed his coat. Kollar also claims that he advised the appellee that he was under arrest.
Kollar called for assistance and two other officers, appellants Robinson and Green, responded. They observed Lutz holding Kollar's coat and pulling him into the classroom. The door to the room locked automatically. The entrance door to the classroom was closed and locked, leaving Kollar alone with the appellee. Kollar also testified in his affidavit that "He (appellee) used profanities profusely and his speech was unnecessarily loud."
The other two officers saw Kollar break free of the appellee's grasp and attempt to distance himself from the appellee. They also claim that the appellee reached for Kollar's pistol as he lunged toward the officer. Kollar claimed that he "attempted to keep [his] distance from [appellee] by backpedaling away from him" and sprayed him with his foam pepper spray. Kollar gained release from the appellee after spraying the pepper spray and claims he opened the classroom door to allow Officers Robinson and Green to enter. Kollar claims that after opening the door, the appellee was screaming and tackled him; on the floor the appellee wrapped his arms around Kollar and was again reaching for his pistol. All three officers wrestled and eventually subdued and handcuffed the appellee.
Officers from the Athens County Sheriff's Department arrived on the scene and took custody of the appellee. As he was transported, and later at the jail, the appellee continued to resist the deputies. An altercation took place at the jail and a deputy used pepper spray to subdue the appellee. (As noted earlier, Lutz has dismissed the claims against the deputies.)
Kollar charged the appellee with disorderly conduct, resisting arrest, and failure to control his vehicle. Despite the plethora of trouble the appellee had caused under the appellants' account of the events, Kollar did not charge him with DUI. Kollar claimed he did not do so because such a charge might cost the appellee his job. As noted earlier, the appellee eventually pled no contest to the failure to control charge and was acquitted of the remaining charges.
 B. Appellee's Deposition and Affidavit Testimony
The appellee's deposition testimony described the incident quite differently than Kollar's account. The appellee recalled that Kollar knocked at the door and that the two men carried on a brief discussion in the doorway, during which the appellee admitted that he was the driver of the truck. After that, according to the appellee, it was appellant Kollar who took the role of the aggressor. The appellee claims that Kollar placed his hand on the appellee's arm and said, "You're coming with me." The appellee told the officer that he wanted to wait for his wife and pulled away from Kollar. The appellee testified that he attempted to go back to his desk in the classroom and retrieve a business card in order to show the officer who he was. As he tried to present the card to Kollar, the appellee testified that Kollar said, "I already know who you are, you asshole. I've ran your plates." At that point, the appellee testified how Kollar escalated the situation into a physical confrontation. The appellee claims that he was sprayed with pepper spray as he tried to show Kollar his business card. According to the appellee, Kollar sprayed him in the face and eyes and tried to handcuff him behind his back. The appellee acknowledges that he resisted and "was doing everything to avoid that happening." The appellee admits he did not want to go with the officers and that he "did everything I could possibly do to keep them from taking me through the door."
The appellee also described the incident in a later affidavit submitted in opposition to the appellants' summary judgment motion.[2] The affidavit describes how Kollar initiated the physical confrontation and sprayed pepper spray into the appellee's face. At one point during the struggle, Kollar allegedly told the appellee "go ahead and die asshole" when the appellee complained that he could not breathe. The appellee does not deny resisting the officers' use of force; however, the appellee did not believe he was resisting "arrest" because he was never informed he was under arrest. The appellee testified in his affidavit that he resisted in self-defense, in order to prevent what he perceived as the violent actions taken by the appellants.
 III. Appealability
Generally, a trial court's denial of summary judgment is not a final appealable order. See Whiteside, Ohio Appellate Practice (1999 Ed.) 59, Section 2.36. However, effective January 27, 1997, the General Assembly amended R.C. 2744.02 to add paragraph (C), which states:
 "An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in Chapter 2744, or any other provision of the law, is a final order."
The conservation of fiscal resources of political subdivisions is one of the principal statutory purposes behind R.C. Chapter 2744's immunities and liability limitations. SeeMenefee v. Queen City Metro (1990), 49 Ohio St.3d 27, 29. R.C.2744.02(C) furthers this legislative purpose by allowing political subdivisions (and their employees) to immediately appeal the denial of an immunity. Kagy v. Toledo-Lucas Cty.Port Auth. (1997), 121 Ohio App.3d 239, 244. Immediate appeal may help prevent political subdivisions from devoting time and resources to defending a suit, only to have an appellate court determine after trial that they were immune from suit all along. Id.
Based on R.C. 2744.02(C), we denied the appellee's motion to dismiss this appeal in its entirety and allowed the case to proceed on appeal solely on the issue of the trial court's denial of summary judgment on immunity grounds. Accordingly, the scope of our appellate jurisdiction is limited to whether the trial court erred in denying summary judgment based on R.C. Chapter 2744 immunity and we cannot address any issues beyond that determination. See Shampton v. City of Springboro (Jan. 11, 1999), Warren App. No. 98-02-014, unreported and the discussion infra concerning our jurisdiction.
 IV. Statutory Immunity From Liability For State Law Claims
The appellants argue that the trial court should have granted summary judgment based on immunity granted by R.C. Chapter 2744. The availability of immunity is a question of law that is properly determined prior to trial. Hall v. Ft. Frye Loc.School Dist. Bd. of Edn. (1996), 111 Ohio App.3d 690, 694. However, the applicability of an immunity defense may become fact specific, e.g., whether evidence of recklessness exists that would take certain conduct out of immunity protection. Seeid. Summary judgment pursuant to Civ.R. 56(C) is appropriate if: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when viewing the evidence most strongly in favor of the non-moving party, reasonable minds could only conclude in favor of the moving party. Bostic v. Connor (1988),37 Ohio St.3d 144, 146. We review a trial court's summary judgment decision on immunity grounds de novo. See Hall,111 Ohio App. 3d at 694.
In support of summary judgment, the appellants alleged that the college was immune from liability as a political subdivision and that the individual officers were immune from liability as political subdivision employees. We analyze each of these contentions in turn.
 A. Statutory Immunity of the Individual Officers
The individual appellants claim immunity under R.C.2744.03(A)(6), which provides:
 "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
* * *
 (6) * * * [T]he employee (of a political subdivision) is immune from liability unless one of the following applies:
 (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 (c) Liability is expressly imposed upon the employee by a section of the Revised Code.
* * *
By its terms, R.C. 2744.03(A)(6) operates as a presumption of immunity.[3] Cook v. Cincinnati (1995), 103 Ohio App.3d 80, 90. Thus, pursuant to R.C. 2744.03(A)(6), police officers are immune from suit for acts within their official duties unless one of the enumerated exceptions applies. Id. This statutory immunity may also be characterized, in its effect, as a qualified immunity. In other words, immunity will attach to the conduct of political subdivision employees so long as one of the exceptions does not apply. See Miller v. Leesburg (1993),87 Ohio App.3d 171, 175 (recognizing R.C. 2744.03 as a qualified immunity statute).
The appellee does not argue that R.C. 2744.03(A)(6)(a) or (c) are applicable to the appellants' conduct. Thus, the only barrier to R.C. 2744.03(A)(6) immunity is whether the appellants acted in a wanton, reckless, or malicious manner. The appellants were entitled to summary judgment if there was no genuine issue of material fact concerning their statutory immunity. Shampton v. Springboro, supra; see, also, Vaughtersv. Scioto County Sheriff's Dept. (Sept. 23, 1997), Scioto App. No. 97CA2490, unreported. The party seeking summary judgment based on an immunity defense must present evidence tending to prove the underlying facts upon which the defense is based.Hall, supra, 111 Ohio App.3d at 695. To defeat summary judgment, the non-moving party must produce evidence showing the existence of a genuine issue as to these material facts.Id. Therefore, if the appellee has raised a genuine issue of fact as to the existence of malice, bad faith, or wanton or reckless conduct, immunity could not be afforded in the summary judgment context. Shampton, supra ("For immunity to be denied at the summary judgment stage, the appellee need only have presented evidence from which an inference of bad faith could be drawn"). In order to review the trial court's denial of R.C. Chapter 2744 immunity to the individual appellants, we must review whether the trial court correctly decided that genuine issues of fact exist regarding whether the officers acted with malice, bad faith, wantonness, or recklessness.[4]
"Wanton" misconduct refers to a failure to exercise any care whatsoever. Fabrey v. McDonald (1994), 70 Ohio St.3d 351, 356;Hawkins v. Ivy (1977), 50 Ohio St.2d 114, syllabus. "Reckless" refers to conduct that causes an unreasonable risk of harm and is "substantially greater than that which is necessary to make his conduct negligent." Thompson v. McNeil (1990), 53 Ohio St.3d 102,104-05 (quoting 2 Restatement of the Law 2d, Torts (1965) 587, Section 500). The term "malice" is the "willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." Hicks v. Leffler (1997), 119 Ohio App.3d 424,428-29. "Bad faith" implies sinister motive and also refers, by way of analogy to insurance law, to that which has "no reasonable justification." Id. at 429 (quoting Zoppo v.Homestead Ins. Co. (1994), 71 Ohio St.3d 552, 554). The trial court expressly stated that genuine issues of material fact existed regarding the presence of malice, recklessness, or wanton misconduct:
 "Again, even if Kollar had probable cause to arrest Plaintiff for DUI, Plaintiff has presented summary judgment evidence suggesting that the arrest was effected in a malicious, wanton, and bad faith manner. If Plaintiff is believed, he was maced when he benignly attempted to present his business card as identification, and then beaten, punched, and kicked. Moreover, Plaintiff testified by deposition and affidavit that officers called him an "asshole" and that while he was face down on the floor and nearly suffocating under the weight of the officers, one of them said "go ahead and die asshole". This creates a genuine issue of fact as to the characterization of the officers' conduct for purposes of R.C. Chapter 2744 immunity. Summary judgment thus is inappropriate."
We agree with this assessment. The appellee has raised a genuine issue of fact regarding the sequence of events that give rise to his complaint. Simply put, the appellee's story is that the officers did not have probable cause to effectuate any type of arrest, that they exceeded the bounds of reasonable force, and that he was prosecuted for merely defending himself against the officers' unlawful conduct. Moreover, if true, the officers' use of abusive language is probative of bad faith and malice. See Piro v. Franklin Twp. (1995), 102 Ohio App.3d 130,140 (despite existence of probable cause, officer calling the plaintiff a "guinea, " a "wop," and a "mobster," and commenting on the negative impact an arrest would have on the plaintiff's career were probative evidence of malice to defeat summary judgment on immunity grounds). We are in no position to judge the appellee's credibility and must construe the evidence in the light most favorable to him at the summary judgment stage. See Turner v. Turner (1993), 67 Ohio St.3d 337, 341.
The appellants contend that, while wanton misconduct is normally a jury question, inferences alone are not sufficient to defeat a public employee's claim for immunity on summary judgment. See Miskinis v. Chester Twp. Park Dist. (1996),112 Ohio App.3d 466, 471. However, the appellee has presented more than mere inferences. Miskinis, cited by the appellants, is distinguishable from this case. In Miskinis, the public employee was granted summary judgment because the appellant failed to set forth specific facts regarding the defendant's malice or bad faith. See id. at 466. The plaintiff merely relied on the allegations of his complaint. Id. In this case, the appellee has affidavits and deposition testimony that raise genuine issues of fact with respect to the officers' malice, bad faith, or wanton misconduct. While the appellants have presented testimony and affidavits concerning their side of the story, the appellee's deposition testimony and affidavits submitted in opposition to summary judgment cast the events of March 1, 1996 in an entirely different light. When the inference of malice may depend on whether the trier of fact believes one party or another, summary judgment is not appropriate. Evans v. Smith (1994), 97 Ohio App.3d 59, 69. Accordingly, the trial court did not err in denying summary judgment to appellants Kollar, Robinson, and Green on statutory immunity grounds.
 B. Hocking Technical College's Statutory Immunity
Appellant Hocking Technical College's statutory immunity is a different matter. The college is considered a political subdivision of the state. Mihalcin v. Hocking College (Dec. 14, 1995), Franklin App. No. 95API06-760, unreported. As a political subdivision, the college claims immunity from liability under state causes of action for injury to a person "caused by any act or omission of * * * an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). The operation of a police department by a college is a "governmental function." R.C. 2744.01(C)(2)(a); see, also, McCloud v. Nimmer (1991),72 Ohio App.3d 533, 538. The immunities granted generally by R.C.2744.01(A)(1) are subject to the exceptions contained in R.C.2744.02(B). Id. The appellee cites no provision of R.C.2744.02(B) that removes the college's cloak of sovereign immunity. Even though employees of political subdivisions may be liable for wanton, willful, or malicious actions pursuant to R.C. 2744.03(A)(6), this exception to immunity applies only to the employees and not to the political subdivision itself.Nungester v. Cincinnati (1995), 100 Ohio App.3d 561, 566. Thus, the trial court should have granted immunity to Hocking Technical College on the appellee's state law causes of action. We sustain the assignment of error to this limited effect.
 C. Probable Cause Issue Is Not Properly Before the Court
Additionally, the appellants extensively argue that probable cause existed to justify arresting and prosecuting the appellee for DUI, disorderly conduct, and resisting arrest. The appellants' argument that probable cause existed was also a basis for their summary judgment motion in the trial court. The trial court did not make a ruling as to the existence of probable cause, explaining that it was an issue for the trier of fact. See Tallmadge v. McCoy (1994), 96 Ohio App.3d 604;State v. Bernard (1985), 20 Ohio App.3d 375, 376. The trial court noted that probable cause was "a close case" given the evidence submitted on summary judgment and decided that the determination was better suited for the trier of fact. On this appeal, the appellants ask us to revisit the trial court's determination that genuine issues of fact remain as to probable cause, as they relate to the causes of action for assault and battery, false arrest, and malicious prosecution. However, we cannot do so.
As we have stated, our appellate jurisdiction on the denial of summary judgment in this case is limited to the issues of immunity. The issue of whether "probable cause" existed to arrest the appellee, and then to prosecute him for the charged offenses, does not call upon this court to determine any question relating to sovereign immunity. Rather, the issue of probable cause relates to the elements of either the appellee's claims or the appellants' defenses. Indeed, the existence of probable cause to arrest is a defense to false arrest. SeeZimmer v. Lazarus Dept. Stores (May 7, 1992), Allen App. No. 1-89-85, unreported. Similarly, the existence of probable cause to prosecute a criminal complaint defeats a cause of action for malicious prosecution because the lack of probable cause is an essential element of a plaintiff's claim. See Trussell v.General Motors Corp. (1990), 53 Ohio St.3d 142, syllabus. Resolving the merits of whether probable cause existed thus involves a determination of the merits rather than a determination of whether immunity is available. Cf. Young v.Akron City Schools (Oct. 14, 1998), Summit App. No. 18787, unreported (dismissing appeal of summary judgment denial because defendants raised issues relating to issues of fact rather than issues relating to sovereign immunity). Thus, the appellants' arguments regarding the existence of probable cause are not properly a subject of this appeal.
 V. Qualified Immunity Under Section 1983
The appellants argue that the trial court erred in denying them qualified immunity from suit, in addition to "statutory immunity." The appellants' brief sets forth a separate argument for "qualified immunity," contending that this doctrine protects them from liability.
As we indicated above, the statutory immunities provided under R.C. Chapter 2744 are, by definition, qualified immunities. To the extent the appellants assert that a separate common law qualified immunity exists concerning the appellee's state law causes of action, the argument is misplaced. Our previous analysis of the statutory immunities addresses whatever "qualified immunity" is available to the appellants under Ohio substantive law. The appellants' enumeration of "qualified immunity" and "statutory immunity" under state law therefore becomes a mere redundancy. However, we may also construe the appellants' argument for qualified immunity as applying only to the appellee's federal cause of action brought under Section 1983, Title 42, U.S.Code. Construed in this fashion, the appellants' argument is distinct from their "statutory immunity" arguments and potentially worthy of separate analysis. This construction, however, also deprives us of appellate jurisdiction.
 A. Denial of Section 1983 Qualified Immunity
The essence of a claim under Section 1983 is that a claimant has been deprived of a right secured by federal law. The statute states:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress."
Section 1983, while not providing any substantive rights, provides a civil remedy for "vindicating federal rights elsewhere conferred." Baker v. McCollan (1979), 433 U.S. 137,144, fn.3, 99 S.Ct. 2689, 2694, fn.3, 61 L.Ed.2d 433; see, generally, Monroe v. Pape (1961), 365 U.S. 167, 81 S.Ct. 473,5 L.Ed.2d 492. This remedy, however, is subject to certain immunities. It is well-settled that government officials or employees performing discretionary functions, including police officers, are entitled to qualified immunity "insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person should have known." Harlowv. Fitzgerald (1982), 457 U.S. 800, 818, 102 S.Ct. 2727,73 L.Ed.2d 396.
The U.S. Supreme Court has stated that Section 1983 qualified immunity, under certain circumstances, "is an immunity fromsuit rather than a mere defense to liability." Mitchell v.Forsyth (1985), 472 U.S. 511, 526-28, 105 S.Ct. 2806, 2816,86 L.Ed.2d 411 (emphasis sic); see, also, Hunter v. Bryant (1991),502 U.S. 224, 227-28, 112 S.Ct. 534, 116 L.Ed.2d 589. Partly for this reason, a federal appellate court has jurisdiction to review the denial of qualified immunity on an interlocutory appeal, but only to the extent it "turns on an issue of law * * *." Mitchell, 472 U.S. at 530, 105 S.Ct. at 2817. The mechanism of interlocutory appellate review, however, is a matter of federal procedure and not a matter of federal substantive law. Johnson v. Fankell (1997), 520 U.S. 911,117 S.Ct. 1800, 1806, 138 L.Ed.2d 108. It is rooted in the "collateral order doctrine" embodied in Section 1291, Title 28, U.S. Code, which allows immediate appeal in the federal courts of certain "final decisions" that are completely separate from the merits of the action and effectively unreviewable on appeal after final judgment. Johnson v. Jones (1995), 515 U.S. 304,310, 115 S.Ct. 2151, 2155, 132 L.Ed.2d 238; Mitchell,472 U.S. at 524-25, 105 S.Ct. at 2814-15; see, generally, Cohen v.Beneficial Industrial Loan Corp. (1949), 337 U.S. 541,69 S.Ct. 1221, 93 L.Ed. 1528. While the Section 1983 qualified immunity defense is a matter of federal substantive law that must be recognized in state courts, immediate appellate review of a qualified immunity denial "is a federal procedural right that simply does not apply in a nonfederal forum." Johnson v.Fankell, 117 S.Ct. at 1805-06 (emphasis added). Thus, Fankell
upheld the Idaho Supreme Court's decision that it lacked appellate jurisdiction, pursuant to Idaho's appellate rules, of a lower court's denial of a motion to dismiss based on qualified immunity. Similarly, whether we may entertain an interlocutory appeal of the trial court's denial of summary judgment on Section 1983 qualified immunity grounds depends on whether Ohio's appellate procedure allows it. We hold that it does not.
It is well established in Ohio that an appellate court lacks jurisdiction over orders which are not final. General Acc. Ins.v. Insurance Co. of North America (1989), 44 Ohio St.3d 17, 20;Renner's Welding Fabrication, Inc. v. Chrysler Motor Corp.
(1996), 117 Ohio App.3d 61, 64. Under Ohio procedural practice, the denial of summary judgment is not a final appealable order.Celebrezze v. Netzley (1990), 51 Ohio St.3d 89, 90; R.C.2505.02; see, also, State ex rel. Overmeyer v. Walinski (1966),8 Ohio St.2d 23. However, a cursory glance of R.C. 2744.02(C) appears to allow an immediate appeal of a trial court's denial of Section 1983 qualified immunity. This statute, added by the General Assembly in 1997, defines a denial of immunity as a "final order" and provides for immediate appeal of that determination:
 "An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in Chapter 2744. or any other provision of the law
is a final order."
R.C. 2744.02(C) (emphasis added). As used in Chapter 2744 since its original enactment in 1985, "the law" is defined as "any provision of the constitution, statutes, or rules of the United States or of this state * * *." R.C. 2744.01(D). This far-reaching definition, by its terms, would appear to include federal law. See Marcum v. Rice (Nov. 3, 1998), Franklin App. Nos. 98AP-717, 98AP-718, 98AP-179, 98AP-721, unreported (the term "law" standing alone in Chapter 2744 encompasses all federal and state rules, both judicial and legislated).
Nevertheless, what R.C. 2744.02(C) broadly giveth, R.C.2744.09(E) specifically taketh away. R.C. 2744.09(E) states:
 "[R.C. Chapter 2744] does not apply to and shall not be construed to apply to, the following:
* * *
 "(E) Civil claims based upon alleged violations of the constitution or statutes of the United States, except that the provisions of section 2744.07 of the Revised Code shall apply to such claims or related civil actions."[5]
Thus, under the plain language of R.C. 2744.09(E), the interlocutory appeal rights provided under R.C. 2744.02(C) are inapplicable to Section 1983 actions brought in Ohio's courts. We therefore decline to review the trial court's denial of summary judgment on the appellee's Section 1983 claims against the individual officers.[6]
We recognize that R.C. 2744.09(E) seemingly conflicts with the language contained in R.C. 2744.01's definitions and R.C.2744.02(C)'s interlocutory appeal provision. If R.C.2744.02(C)'s purpose is to allow political subdivisions and their employees the chance for immediate appeal of immunity denials, it seems incongruous to deny that same opportunity in Section 1983 qualified immunity denials, particularly since the federal courts allow such a procedure. To allow immediate appeal in a Section 1983 action when the trial court denies qualified immunity would advance the apparent legislative purpose behind R.C. 2744.02(C), i.e. to preserve a political subdivision's fiscal resources by potentially allowing a quick resolution of the qualified immunity issue. See Kagy, supra,121 Ohio App.3d at 244. Given this rationale, it is tempting to conclude that the General Assembly intended for R.C. 2744.02(C) to apply to Section 1983 actions and operate as either a repeal or limitation of R.C. 2744.09(E). Notwithstanding the General Assembly's later enactment of R.C. 2744.02(C), however, we cannot ignore R.C. 2744.09(E)'s categorical edict that R.C. Chapter 2744 shall not apply to federal claims. We will not hold prior legislation to be impliedly repealed by seemingly contradictory subsequent legislation unless the later legislation clearly requires such a holding. Cincinnati v.Thomas Soft Ice Cream, Inc. (1977), 52 Ohio St.2d 76, 78-79. If the legislature intended to allow immediate appellate review of qualified immunity denials in Section 1983 actions pursuant to R.C. 2744.02(C), it could have easily amended R.C. 2744.09(E) to reflect that intent. The General Assembly presumably has knowledge of prior legislation when it enacts subsequent legislation; therefore, we assume that "had the General Assembly intended to nullify such prior legislation it would have done so by means of an express repeal thereof." Id. at 79. The fact that R.C. 2744.02(C) and 2744.09(E) are contained in the same chapter of the Revised Code strengthens this idea. We cannot conclude that R.C. 2744.02(C) "clearly" operates as a repeal or limitation of R.C. 2744.09(E).
 B. Policy or Custom of Inadequate Training
We take note of one final argument raised by the appellants in this appeal. Appellant Hocking Technical College takes issue with the allegations in the appellee's complaint concerning an alleged "failure to adequately train, supervise and discipline law enforcement employees, failure to fully investigate incidents such as this one, and ratification of actions such as those of the [individual] Appellants herein." The appellants correctly note that inadequacy of police training is actionable under Section 1983 only upon a showing of deliberate indifference to the rights of persons with whom the police have contact. See Canton v. Harris (1989), 489 U.S. 378, 388,109 S.Ct. 1197, 103 L.Ed.2d 412. The appellants argue that the appellee has "failed to plead, and more importantly, has not alleged any facts to prove" a policy or custom amounting to deliberate indifference. The appellants apparently request that we grant summary judgment to the college on this Section 1983 claim. We cannot do so, as the appellants have once again asked us to reach beyond the bounds of our appellate jurisdiction.
As we have indicated, R.C. 2744.09(E) prevents us from applying R.C. Chapter 2744 to Section 1983 actions. Thus, insofar as the appellants rely upon R.C. 2744.02(C) as a vehicle for interlocutory appellate review of this issue, their reliance is erroneous. Further, assuming arguendo that R.C.2744.02(C) provided us with interlocutory appellate jurisdiction over a trial court's denial of Section 1983 qualified immunity, we would still be unable to review this issue. The failure to plead or produce any facts to establish a policy or custom of deliberate indifference has no relation to the law of qualified immunity. Rather, that deficiency arises from the appellee's purported failure to provide summary judgment evidence on an essential element of his Section 1983 action. Moreover, the Section 1983 qualified immunity doctrine applies to government officials only and not to political subdivisions. Cook v. Cincinnati, supra, 103 Ohio App.3d at 89
(citing Owen v. City of Independence (1990), 445 U.S. 622,100 S.Ct. 1398, 63 L.Ed.2d 673). Whether there remains a genuine issue concerning the elements of an inadequate training and supervision claim does not relate to immunity, and would therefore not be appealable even if R.C. 2744.02(C) were applicable here.
 VI. Disposition
The appellants' lone assignment of error is sustained in part and overruled in part with respect to the appellee's state law claims. We affirm the trial court's denial of summary judgment on R.C. Chapter 2744 immunity grounds to appellants Kollar, Robinson, and Green concerning the state law causes of action. However, we reverse the trial court's denial of R.C. Chapter 2744 immunity to appellant Hocking Technical College. The college is entitled to summary judgment on all state law claims based on political subdivision immunity.
As for the appellants' argument that probable cause existed to arrest and prosecute the appellee, this issue is beyond the scope of our review. Although probable cause provides a defense to liability for false arrest and malicious prosecution, our appellate jurisdiction at this stage is expressly limited to reviewing the denial of immunity. R.C. Chapter 2744 has, in effect, elevated the immunity issue to a status not enjoyed by other defenses. We may entertain an interlocutory appeal of a denial of immunity, but we may not review the separate and distinct concept of probable cause.
As to the federal claims predicated upon Section 1983, Title 42, U.S. Code, we hold that the issue of federal qualified immunity is not properly before us on this appeal. Interlocutory appeal of a denial of Section 1983 qualified immunity is not available under Ohio appellate procedure. Thus, we dismiss the appellants' appeal to the extent it raises issues related to Section 1983 qualified immunity. We are also unable to review the purported failure of the appellants to plead or prove elements of their case against appellant Hocking Technical College concerning failure to train, supervise, etc. its employees.
Therefore, we affirm in part and reverse in part the trial court's judgment, dismiss the appeal in part, and remand for proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, APPEAL DISMISSED IN PART, AND REMANDED.
[1] The appellee's complaint also included Athens County Deputy Sheriff Cooper and Athens County Deputy Sheriff Warren as defendants. Deputies Warren and Cooper were voluntarily dismissed from the action by the appellee and are not parties to this appeal.
[2] The appellants argue that the appellee's affidavit contradicts his deposition testimony and that we must therefore disregard the appellee's affidavit for purposes of summary judgment. SeePush v. A-Best Products, Co. (Apr. 18, 1996), Scioto App. No. 94CA2306, unreported, at fn. 7. To the extent the appellee's affidavit in opposition to summary judgment contradicted his deposition testimony, we rely on the appellee's deposition testimony. However, we also note that the only instances of incongruity cited by the appellants are questionable. The appellants complain that the appellee admitted in his deposition that he refused to return to the scene of the accident and that he fought with the officers but, in his affidavit, swears he did not resist arrest. The context of the appellant's affidavit, however, reveals that the appellee claims he did not resist arrest because he was never told he was under arrest. The affidavit admits a struggle with the officers, but characterizes it as self-defense, which is wholly consistent with his deposition.
The appellants also complain that the appellee's affidavit tells an "entirely different story" than his deposition concerning the sequence of events immediately prior to Kollar's use of pepper spray. The appellants' purported differences, when reading the deposition and the appellee's affidavit in context, are negligible at best and can be described as the difference between six of one and one-half dozen of the other.
[3] For political subdivisions, the statutory scheme sets up a general grant of immunity, R.C. 2744.02(A), with enumerated exceptions giving rise to liability under R.C. 2744.02(B).Hall, supra, 111 Ohio App.3d at 695. In a suit alleging liability under these exceptions, the political subdivision may assert defenses and immunities outlined in R.C. 2744.03. Id.
[4] This decision regarding the scope of our appellate review is in conflict with a ruling from the Ninth District Court of Appeals. In Brown v. Akron Bd. of Edn. (Aug. 12, 1998), Summit App. No. 18808, unreported, the court was faced with an interlocutory appeal from a denial of summary judgment to a school board. The school board argued that it was immune from suit absent malicious purpose, bad faith, or wanton or reckless conduct. See R.C. 2744.03(A)(5). Dismissing the appeal, the Ninth District held:
 "Resolving the merits of this appeal would not call upon this Court to decide any question regarding sovereign immunity. Rather, it would only require a determination of whether the trial court erred in determining that there was a genuine issue of fact regarding whether the Board's employees acted with malicious purpose, bad faith, or in a wanton or reckless manner."
We take the opposite position. In our view, R.C. 2744.02(C) allows immediate appellate review of a trial court's finding of a genuine issue of fact impacting the applicability of immunity.
[5] The exception of R.C. 2744.07, which deals with a political subdivision's duty to defend and indemnify a political subdivision employee, is inapplicable here.
[6] The appellants' assignment of error expressly limits their appeal to the trial court's denial of summary judgment on R.C. Chapter 2744 grounds only. Thus, we construe the appellants' attempted appeal of the trial court's Section 1983 qualified immunity denial as being solely based upon R.C. 2744.02(C)'s allowance of immediate appeal on immunity questions.
Assuming, arguendo, that the appellants had also attempted to appeal the trial court's Section 1983 qualified immunity denial under R.C. 2505.02's general definition of a "final order," we would still decline review. As noted previously, a trial court's denial of summary judgment is not an appealable "final order" under R.C. 2505.02. The fact that denial of summary judgment in this case denied the appellants an alleged right to Section 1983 qualified immunity does not change the analysis. Federal case law creating interlocutory appellate review does not create a new class of final appealable orders under our state procedural law. See Ohio Civ. Serv. Emp. Assn. v. Moritz
(1987), 39 Ohio App.3d 132, 133 (holding that denial of summary judgment based on Section 1983 qualified immunity is not a final appealable order); see, also, Celebrezze v. Netzley,supra, 51 Ohio St.3d at 91 (Ohio has not adopted "collateral order rule" similar to federal rule, rendering federal cases permitting interlocutory appeal meaningless for state procedural purposes). The trial court's denial of qualified immunity, and therefore summary judgment, on the appellee's Section 1983 claims is not a final appealable order.
We note that our view in this regard conflicts with a ruling of the First District Court of Appeals in Piphus v. Blum
(1995), 108 Ohio App.3d 218. In Piphus, the defendants appealed a trial court's denial of summary judgment on qualified immunity grounds in a Section 1983 civil rights claim for declaratory and injunctive relief. The appellees moved to dismiss the appeal for lack of a final appealable order. Id. at 220, fn.2. Without explanation, the First District "denied the motion and [proceeded to] exercise jurisdiction to decide the appeal on its merits." Id.