[Cite as *E. Ohio Gas Co. v. Akron*, 2012-Ohio-3780.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

EAST OHIO GAS COMPANY

    Appellee

    v.

CITY OF AKRON

    Appellant

C.A. No.      25830

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2009-08-5836

DECISION AND JOURNAL ENTRY

Dated: August 22, 2012

---

CARR, Presiding Judge.

{¶1}   Appellant, the City of Akron, appeals the order of the Summit County Court of Common Pleas that denied its motion for summary judgment asserting immunity under R.C. Chapter 2744.  This Court reverses.

I.

{¶2}   On May 13, 2007, a water main at the intersection of Glenwood Avenue and Gorge Boulevard in Akron ruptured.  An employee of the Akron Highway Department who was on his overnight rounds noticed the water and stopped to investigate.  He barricaded the area and notified the Akron Water Department that it looked like "a bad break."  When he returned to the intersection with more barricades, however, he concluded that it "[was] not that bad" and called the Water Department again.  Because it was around 2:30 a.m. on a weekend, the Water Department Dispatcher called the Supervisor on duty, who decided to wait until the morning shift started at 7:30 a.m. to send an inspector and a crew to the scene.  Meanwhile, customers of

Dominion East Ohio Gas started to complain about interruptions in their natural gas service. A Dominion employee responded to the intersection after Water Department crews had started repairing the break later that morning, and he discovered then that there was a hole in the underside of a natural gas line that lay directly above the split in the effected water main.

{¶3} Dominion sued Akron for damages related to the repair of its natural gas line and its customers' delivery systems, alleging that Akron negligently failed to dispatch a repair crew to the scene of the water main break overnight. Both parties moved for summary judgment. Akron argued, in part, that it was immune from suit under R.C. Chapter 2744, but Dominion did not respond to Akron's arguments regarding immunity other than to characterize them as "frivolous" and "made only for the purposeful attempt to delay." The trial court concluded that there were genuine issues of material fact and denied both motions. Akron appealed, as permitted by R.C. 2744.02(C), and assigned two errors for review. The second is dispositive of this appeal, so we address them in reverse order.

II.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN HOLDING THAT THE IMMUNITY DEFENSES OF R.C. 2744.03(A)(3) AND (A)(5) DO NOT APPLY IN THIS CASE.

{¶4} Akron's assignment of error argues that the trial court erred by denying its motion for summary judgment with respect to the immunity described in R.C. 2744.02 and R.C. 2744.03. We agree.

{¶5} This Court reviews an order that grants summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.

*See* Civ.R. 56(C). In applying this standard, evidence is construed in favor of the nonmoving party, and summary judgment is appropriate if reasonable minds could only conclude that judgment should be entered in favor of the movant. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 686-87 (1995).

{¶6} As a general rule, political subdivisions are "not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). This immunity, however, is subject to the exceptions described in R.C. 2744.02(B). One of these exceptions provides that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2). In other words, if the basis for a claim is the performance of a governmental function, a political subdivision is immune from suit for negligence unless one of the other four exceptions described in R.C. 2744.02(B) is present. On the other hand, a political subdivision does not have immunity for negligent acts committed in the performance of a proprietary function absent the conditions described in R.C. 2744.03.

{¶7} Even if we assume that Akron acted negligently in connection with a proprietary function, therefore, it is immune from liability if one of the situations described in R.C. 2744.03(A) is present. The City has argued that it is immune under either R.C. 2744.03(A)(3) or R.C. 2744.03(A)(5). Under R.C. 2744.03(A)(3), a political subdivision is immune when "the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."

Under R.C. 2744.03(A)(5), the political subdivision is immune "if the * * * loss to * * * property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶8}    R.C. 2744.03(A)(3) and (A)(5) are similar to the extent that they address the exercise of discretion by employees of a political subdivision.  Nonetheless, the provisions have two different objects in view.  R.C. 2744.03(A)(3) addresses the actions of employees whose work is consistent with "discretion * * * with respect to policy-making, planning, or enforcement powers[,]" but R.C. 2744.03(A)(5) addresses the actions of employees whose discretion is exercised at a different level, "from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources."  The challenge inherent in these provisions is identifying where the boundary of discretionary activity that is shielded by immunity lies.  Although R.C. 2744.03(A)(5) does not shield routine decisions from liability, it does provide immunity as provided in the statute for "'positive exercise[s] of judgment that portray[] a considered adoption of a particular course of conduct in relation to an object to be achieved.'"  *Shumaker v. Park Lane Manor of Akron*, 9th Dist. No. 25212, 2011-Ohio-1052, ¶ 19.  This immunity:

> operates to protect political subdivisions from liability based upon discretionary judgments concerning the allocation of scarce resources; it is not intended to protect conduct which requires very little discretion or independent judgment. The law of immunity is designed to foster freedom and discretion in the development of public policy while still ensuring that implementation of political subdivision responsibilities is conducted in a reasonable manner.

*Hall v. Fort Frye Local School Dist. Bd. of Edn.*, 111 Ohio App.3d 690, 699 (4th Dist.1996), citing *Marcum v. Adkins*, 4th Dist. No. 93CA17, 1994 WL 116233 (Mar. 28, 1994).

{¶9} This Court recently applied R.C. 2744.03(A)(5) in a similar situation. In *Shumaker*, the plaintiff alleged that she fell on ice that had accumulated as the result of an unrepaired water main break. *Id.* at ¶ 1. The City of Akron scheduled the repair for Saturday, but the actual repair was postponed until Monday. *Id.* at ¶ 5. On Monday, before the repair was made, the plaintiff slipped on a layer of black ice underneath the flowing water. *Id.* at ¶ 7. The City's position was that "its decision to postpone the * * * repair until Monday was a discretionary allocation of its limited resources." *Id.* at ¶ 20. The plaintiff, on the other hand, argued that "[Akron] was making a routine decision requiring little judgment or discretion[.]" *Id.* at ¶ 21. This Court agreed that the decision to postpone the repair reflected a "positive exercise of judgment" and, accordingly, was a discretionary matter within the meaning of R.C. 2744.03(A)(5). *Id.*

{¶10} This case presents the same type of decision, albeit under different circumstances, and it also presents a matter of discretion within the meaning of R.C. 2744.03(A)(5). The Akron Water Department became aware of the water main break at issue around 2:30 a.m. on a Sunday morning. Although department inspectors rotate emergency shifts from 3:30 p.m. until midnight, there are no inspectors on duty from midnight until 7:30 a.m. According to retired supervisor John Thompson, emergency overtime during the hours from midnight until 7:00 a.m. had to be offered to each foreman by seniority, and each had the right to refuse the overtime. If no foreman accepted the overtime, it had to be offered to each inspector by seniority and, again, each had the right to refuse. Only once every foreman and every inspector refused the overtime opportunity would Mr. Thompson step in as the supervisor to inspect a suspected break. During those hours, assembling a crew would require similar time and efforts. According to Mr. Thompson, he evaluated the call that he received from dispatch regarding the suspected break

and determined that by the time he initiated the overtime procedure to call in a foreman or inspector and, again, to assemble a crew, the water main break would receive no earlier attention than if the inspector on duty at 7:30 a.m. went to the scene immediately.

{¶11} Mr. Thompson's determination that, based on the information that had been provided to him, the water main break should receive immediate attention when the 7:30 a.m. shift began required a "positive exercise of judgment that portrays a considered adoption of a particular course of conduct in relation to an object to be achieved.'" *Shumaker*, 2011-Ohio-1052, at ¶ 19. That decision reflected an "exercise of judgment or discretion in determining * * * how to use * * * personnel" under R.C. 2744.03(A)(5). Accordingly, Akron is entitled to immunity under R.C. 2744.03(A)(5) unless Mr. Thompson's "judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(5).

{¶12} In the trial court and in this Court, Dominion argued that Mr. Thompson acted recklessly in exercising his judgment. In response to Akron's motion for summary judgment, for example, Dominion characterized Mr. Thompson's actions as "a purposeful and intentional decision * * * to not get out of bed and investigate the seriousness of the water main break." In this respect, Dominion has argued that the affidavits submitted in support of Akron's motion for summary judgment should be disregarded because they contradict previous deposition testimony. We disagree.

{¶13} "[W]hen determining the effect of a party's affidavit that appears to be inconsistent with the party's deposition and that is submitted either in support of or in opposition to a motion for summary judgment, a trial court must consider whether the affidavit contradicts or merely supplements the deposition." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶

26. When an affidavit produced by the moving party is inconsistent with the affiant's deposition testimony, "summary judgment may not be granted in the movant's favor" because "when a movant makes substantive changes to deposition testimony, an issue of credibility of the deponent is created and summary judgment is inappropriate." *Id.*, citing *Wright v. Honda of Am. Mfg., Inc.*, 73 Ohio St.3d 571, 575-576 (1995).

{¶14} Dominion moved the trial court to strike Mr. Thompson's affidavit, arguing that it contradicted his deposition testimony. Likewise, Dominion has argued that this Court should not consider Mr. Thompson's affidavit and, consistent with *Byrd*, should find that the contradiction results in a genuine issue of material fact. Although Mr. Thompson's affidavit includes some information that is not included in his deposition testimony, there is no inconsistency between the two. They are, in fact, easily harmonized. The additional information provides specific details about what Mr. Thompson considered when he decided not to call in employees for the incident in question. His deposition testimony described the procedure that the Water Department followed in the event of a report of a water main break, and he described the events of the morning in question in response to general questions from Dominion's counsel. Counsel did not ask Mr. Thompson for more specific information about his decision-making process on that occasion, and Mr. Thompson did not volunteer it. His affidavit, rather than providing contradictory information, fills in that gap and is properly considered in support of Akron's motion for summary judgment.

{¶15} Mr. Thompson's affidavit, in conjunction with his deposition, demonstrates that his exercise of discretion was not wanton or reckless. Conduct is wanton and reckless when a person "perversely disregard[s] a known risk, or act[s] or intentionally fail[s] to act in contravention of a duty, knowing or having reason to know of facts which would lead a

reasonable person to realize such conduct creates an unreasonable risk of harm substantially greater than the risk necessary to make the conduct negligent." *Fowler v. Williams Cty. Commrs.*, 111 Ohio App.3d 760, 775 (6th Dist.1996), citing *Thompson v. McNeill*, 53 Ohio St.3d 102, 104-105 (1990). Based on the information available to Mr. Thompson at the time that he made the decision not to initiate the overtime procedure, which is not in dispute, and the fact that he determined that no more delay would result, Mr. Thompson did not know or have reason to know that his decision would create an unreasonable risk of harm. *See Fowler* at 775.

{¶16} Mr. Thompson's decision was one that involved the exercise of judgment or discretion under R.C. 2744.03(A)(5), and he did not act wantonly or recklessly in making the decision. Consequently, the trial court erred by determining that Akron was not entitled to immunity under R.C. 2744.03(A)(5), and Akron's second assignment of error is sustained.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN HOLDING THAT THE EXCEPTION OF R.C. 2744.02(B)(2) APPLIES TO DEFEAT THE APPELLANT, CITY OF AKRON'S IMMUNITY FROM LIABILITY UNDER R.C. 2744.02(A)

{¶17} Akron's first assignment of error is moot. *See* App.R. 12(A)(1)(c).

### III.

{¶18} Akron's second assignment of error is sustained. Its first assignment of error is moot. The judgment of the Summit County Court of Common Pleas is reversed, and this matter is remanded to the trial court for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

MOORE, J.
DICKINSON, J.
CONCUR.


APPEARANCES:

CHERI B. CUNNINGHAM, Director of Law, and JOHN C. REECE and JANET M. CIOTOLA, Assistant Directors of Law, for Appellant.

STEPHEN J. PRUNESKI, Attorney at Law, for Appellee.