[Cite as *State ex rel. Deem v. Pomeroy*, 2018-Ohio-1120.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| STATE EX REL. DAVID L. DEEM, et al., | : | |
| | : | |
| Relators-Plaintiffs/Appellees, | : | Case No. 17CA3 |
| | : | |
| v. | : | |
| | : | DECISION AND |
| VILLAGE OF POMEROY, et al., | : | JUDGMENT ENTRY |
| | : | |
| Respondents-Defendants/Appellants. | : | RELEASED 03/19/2018 |

APPEARANCES:

Lawrence E. Barbiere and Katherine L. Barbiere, Schroeder, Maundrell, Barbiere & Powers, Mason, Ohio, for respondents-defendants/appellants.

Michael M. Hollingsworth, Michael M. Hollingsworth, Attorney at Law Co., LPA, Athens, Ohio, for relators-plaintiffs/appellees.

Hoover, P.J.

{¶ 1} Defendants-Appellants, the Village of Pomeroy ("the Village"), its mayor and members of the Pomeroy Village Council, in their official capacity, and Shannon Spaun, in his official and individual capacity, (collectively "Appellants"), appeal the judgment of the Meigs County Court of Common Pleas determining that they were not immune from negligence claims asserted by plaintiffs-appellees, David and Jamie Deem (collectively "Appellees").

{¶ 2} On appeal, Appellants argue that the trial court erred in (1) determining that the Village, its mayor and members of the Pomeroy Village Counsel, and Spaun, in his official capacity, were not entitled to immunity under R.C. 2944.02 and 2944.03; and (2) Spaun, in his individual capacity, was not entitled to immunity under R.C. 2944.03.

{¶ 3} Upon review of the record, we conclude that the trial court did not err in determining that the Village, its mayor and members of the Pomeroy Village Counsel, and Spaun, in his official capacity, were not entitled to immunity under R.C. 2944.02 and 2944.03; but it did err in failing to properly consider whether Spaun was entitled to individual immunity under R.C. 2944.03.

{¶ 4} Accordingly, we affirm in part, reverse in part, and remand the judgment of the trial court.

### I. Facts and Procedural History

{¶ 5} In 1994, Appellees moved into a 100-year-old home in Pomeroy, Ohio. The home has three bedrooms and one and one-half baths. There is a covered deck in the backyard, which Appellees later converted into additional living space ("the addition"). Next to Appellees' home is the Meigs County Historical Society & Museum. It consists of two buildings, the newer of which is commonly referred to as "the museum annex." Appellees' home and the historical society sit at the foot of a steep wooded hill.

{¶ 6} Between October 24, 2011 and November 23, 2011, the hill behind Appellees' home slid twice, causing severe damage to their property. Appellees claim that the slides were caused by a leaking water pipe that the Village negligently failed to repair. In October 2013, Appellees filed a complaint against Appellants, Hylant Administrative Services, LLC, The Ohio Plan, Inc., and Laurie O'Malley, individually and as an employee of Hylant Administrative Services, LLC, and The Ohio Plan, Inc.[1] alleging (1) negligence against the Village and its employees; (2) spoliation; (3) bad faith denial of their insurance claim; (4) intentional infliction of emotional distress; (5) conspiracy; and (6) deprivation of constitutional rights under 42 U.S.C.

---

[1] The complaint also named Jane Doe, council member, officer or employee, in her official and individual capacities, Janet Doe, council member, officer or employee, in her official and individual capacities, and John Doe, council member, officer or employee, in his official and individual capacities, as defendants.

§ 1983. They also petitioned for a writ of mandamus directing the Village to commence

appropriation proceedings to address the taking of their property.[2]

{¶ 7} In their complaint, Appellees alleged that the water department's employees

negligently failed to discover and fix a leaking water pipe at the top of the hill behind the

museum annex between October 20, 2011 and October 24, 2011, despite the fact that their

employees had information that would place an ordinary water department worker on notice that

there was a leak. Specifically, they alleged that the employees negligently failed to find and

repair a broken valve on the water pipe leading up the hill prior to the first hill slide.

{¶ 8} Appellees further alleged that when the employees were trying to locate and fix the

water leak, they negligently broke the water pipe with a backhoe. The broken water line

allegedly caused large amounts of water and mud to flow toward Appellees' home, eventually

causing damaging mudslides.

{¶ 9} Finally, Appellees alleged that despite warnings from engineers and others that the

hill must be repaired and stabilized immediately, the Village failed to take any action after the

first hill slide which caused the hill to further deteriorate and slide a second time on November

23, 2011. Appellees also alleged that the Village failed to take necessary measures to remedy the

hill after the second slide thereby causing additional damage to their property.

{¶ 10} Between December 2013 and November 2014, Appellees filed two amended

complaints, clarifying the nature of some of their claims and adding Ruth Spaun, in her

individual capacity, and former Pomeroy Mayor Mary McAngus as defendants. Both defendants

moved to dismiss the claims against them, arguing that the statute of limitations had expired. The

---

[2] The case was initially removed to federal court, but the United States District Court for the Southern District of Ohio remanded the case back to the Meigs County Court of Common Pleas in June 2014 after determining that Appellees' § 1983 claims were not ripe for review.

trial court agreed; and the claims against them were dismissed. Ohio Plan, Inc., Ohio Risk Management, Inc., Hylant Administrative Services, LLC, and O'Malley were also dismissed from the suit after they successfully moved for summary judgment.

{¶ 11} In August 2016, Appellants moved for summary judgment. As relevant here, they argued that the Village was immune from Appellees' negligence claims because their claims related to a governmental function, as opposed to a proprietary one. Specifically, they argued that Appellees' allegations related to flood control measures, as opposed to the establishment, maintenance, and operation of a municipal corporation water supply system. They further argued that even if Appellees' allegations related to the establishment, maintenance, and operation of a municipal corporation water supply system and therefore subjected the Village to liability, immunity was restored because the Village's handling of the slides involved discretionary decisions under R.C. 2744.03(A)(3) and 2744.03(A)(5). Finally, they argued that Spaun was immune from individual liability because his acts or omissions were neither manifestly outside the scope of his employment or official responsibilities nor done with malicious purpose, in bad faith, or in a wanton or reckless manner, as required under R.C. 2744.03(A)(6).

{¶ 12} In October 2016, Appellees filed a memorandum in opposition to summary judgment, arguing that their claims related to a propriety function, as opposed to a governmental function. Specifically, they argued that their allegations related to the establishment, maintenance, and operation of a municipal corporation water supply system, as opposed to flood control measures. They further argued that the Village's immunity was not restored under R.C. 2744.03(A)(3) and 2744.03(A)(5) because the Village's handling of the situation did not involve discretionary decisions under R.C. 2744.03(A)(3) and 2744.03(A)(5). Finally, they argued Spaun

was liable in his individual capacity because his actions were done in bad faith, or in a wanton or reckless manner, as required under R.C. 2744.03(A)(6).

{¶ 13} On February 16, 2017, the trial court denied Appellants' motion for summary judgment, concluding that the Village was not immune from Appellees' negligence claims because their allegations concerned the alleged negligent performance of a proprietary function and did not involve the exercise of discretion, as contemplated by R.C. 2744.03(A)(3) and R.C. 2744.03(A)(5). It did not address whether Spaun was entitled to individual immunity under R.C. 2944.03.

{¶ 14} Appellants timely appealed.

## II. Assignment of Error

THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT TO DEFENDANTS/APPELLANTS VILLAGE OF POMEROY, OHIO, JACKIE WELKER, (former) MAYOR, IN HIS OFFICIAL CAPACITY, RUTH SPAUN, PHIL OLINGER, LUKE ORTMAN, ROBERT PAYNE, IN THEIR OFFICIAL CAPACITIES, AND SHANNON SPAUN IN HIS INDIVIDUAL CAPACITY.

## III. Law and Analysis

## A. Standard of Review

{¶ 15} We review the trial court's decision on a motion for summary judgment de novo. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12. Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate. *Harter v. Chillicothe Long-Term Care, Inc.*, 4th Dist. Ross No. 11CA3277, 2012-Ohio-2464, ¶ 12; *Grimes v. Grimes*, 4th Dist. Washington No. 08CA35, 2009-Ohio-3126, ¶ 16.

{¶ 16} Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to

judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor.  Civ.R. 56(C). The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). To meet its burden, the moving party must specifically refer to "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *Dresher* at 293. Moreover, the trial court may consider evidence not expressly mentioned in Civ.R. 56(C) if such evidence is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Discover Bank v. Combs*, 4th Dist. Pickaway No. 11CA25, 2012-Ohio-3150, ¶ 17; *Wagner v. Young*, 4th Dist. Athens No. CA1435, 1990 WL 119247, *4 (Aug. 8, 1990). Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial. *Dresher* at 293; Civ.R. 56(E).

### B. Political Subdivision Tort Liability

{¶ 17} "The Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability." *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998). The first tier involves determining whether the political subdivision is generally immune from liability under R.C. 2744.02(A)(1). *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007–Ohio–2070,

865 N.E.2d 845, ¶ 10; *see also Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006–Ohio–4251, 852 N.E.2d 716, ¶ 12.

{¶ 18} Once immunity is generally established, "the second tier of analysis is whether any of the five exceptions to immunity in subsection (B) apply." *Id*. at ¶ 12. Only when one of the exceptions listed in R.C. 2744.02(B) applies do courts move to the third tier. *Terry v. Ottawa Cty. Bd. of Mental Retardation & Dev. Disabilities*, 151 Ohio App.3d 234, 2002–Ohio–7299, 783 N.E.2d 959, ¶ 13 (6th Dist.); *Dolan v. Glouster*, 173 Ohio App.3d 617, 2007–Ohio–6275, 879 N.E.2d 838, ¶ 17 (4th Dist.); *see also* Gotherman & Babbit, Ohio Municipal Law (2d Ed.1992), Section 32.4 ("The defenses and immunities provided to a political subdivision by R.C. 2744.03(A) only become relevant if one of the five exceptions to immunity in R.C. 2744.02(B) applies to render the subdivision vulnerable to liability").

{¶ 19} If an exception to the general immunity provision does apply, "under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that any of the defenses contained in R.C. 2744.03 applies." *Hortman* at ¶ 12.

{¶ 20} Here, the parties do not dispute that the Village is entitled to the general grant of immunity under R.C. 2744.02(A)(1). Instead, they dispute whether the exception to immunity found in R.C. 2744.02(B)(2) applies and, if so, whether R.C. 2744.03(A)(3) or 2744.03(A)(5) re-instates immunity. Thus, we begin by considering the applicability of R.C. 2744.02(B)(2).

### 1. The Exception to Immunity Found in R.C. 2744.02(B)(2) Applies

{¶ 21} R.C. 2744.02(B)(2) provides,

Subject to sections 2744.03 and 2744.05 of the Revised Code, a political

subdivision is liable in damages in a civil action for injury, death, or loss to

person or property allegedly caused by an act or omission of the political

subdivision or of any of its employees in connection with a governmental or

proprietary function, as follows:

* * *

Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised

Code, political subdivisions are liable for injury, death, or loss to person or

property caused by the negligent performance of acts by their employees with

respect to *proprietary functions* of the political subdivisions.

(Emphasis added.)

{¶ 22} A "proprietary function" includes, but is not limited to, "*[t]he establishment, maintenance, and operation* of a utility, including, but not limited to * * * a municipal corporation water supply system" and "[t]he maintenance, destruction, operation, and upkeep of a sewer system." (Emphasis added.) R.C. 2744.01(G)(2)(c)-(d). By contrast, a "governmental function" includes, but is not limited to, *"[t]he provision or nonprovision, planning or design, construction or reconstruction of a public improvement*, including, but not limited to, a sewer system" and "[f]lood control measures." (Emphasis added.) R.C. 2744.01(C)(2)(r).

{¶ 23} Although the planning and design of sewer systems is expressly defined as a governmental function, the statute does not limit such "public improvements" to sewer systems. Thus, while R.C. 2744.01(G)(2)(c) provides that the establishment, maintenance and operation of a utility, including a municipal corporation water supply system is a proprietary function, "we believe the planning and design of such a system is a governmental function, much like the planning and design of a sewer system is a governmental function under R.C. 2744.01(C)(2)(l)." *Matter v. Athens*, 2014-Ohio-4451, 21 N.E.3d 595, ¶ 23 (4th Dist.).

{¶ 24} "Determining whether an allegation of negligence relates to the maintenance, operation, or upkeep of a * * * system or, instead, the design, construction, or reconstruction of a * * * system is not always a simple inquiry." *Essman v. City of Portsmouth*, 4th Dist. Scioto No. 09CA3325, 2010-Ohio-4837, ¶ 32. "[W]hen remedying the * * * problem would involve little discretion, but, instead, would be a matter of routine maintenance, inspection, repair, removal of obstructions, or general repair of deterioration, then the complaint is properly characterized as a maintenance, operation, or upkeep issue." *Id*., citing *Martin v. Gahanna*, 10th Dist. Franklin No. 06AP–1175, 2007-Ohio-2651, ¶ 17 and *Zimmerman v. Summit Cty.*, 9th Dist. Summit No. 17610, 1997 WL 22588 (Jan. 15, 1997). In contrast, "[w]hen remedying a problem would require a city to, in essence, redesign or reconstruct the * * * system, then the complaint presents a design or construction issue." *Id*., citing *Zimmerman* at *9.

{¶ 25} In their complaint, Appellees allege that the Village (1) failed to discover and fix the leaking water pipe at the top of the hill behind the museum annex between October 20, 2011 and October 24, 2011, prior to the first hillside; (2) failed to repair a broken handle on a valve on the water line leading up to the hill behind their home; (3) negligently caused the break of the water line behind their home by hooking and pulling the water line with a backhoe when they were trying to locate and fix the water leak at the top of the hill; (4) failed to take any action whatsoever to repair the hill side and stabilize the hill prior to the first hill slide; (5) failed to take any action after the first hill slide to divert water and prevent future damages; and (6) failed to take any action after the second hill slide to prevent further damages.

{¶ 26} Appellants argue that "[d]uring the events giving rise to the lawsuit, [the Village] w[as] engaged in flood control measures pursuant to R.C. 2744.01(C)(2)(r)." Appellants' Brief, p. 14. However, "[n]ormal maintenance does not constitute flood control measures." *Hedrick v.*

*City of Columbus*, 10th Dist. Franklin Nos. 92Ap-1030, 92AP-1031, 1993 WL 104713, *4 (Mar. 30, 1993). Thus, Appellees' claim that the Village (1) failed to discover and fix the leaking water pipe at the top of the hill behind the museum annex between October 20, 2011 and October 24, 2011, prior to the first hillside; (2) failed to repair a broken handle on a valve on the water line leading up to the hill behind their home; and (3) negligently caused the break of the water line behind their home by hooking and pulling the water line with a backhoe when they were trying to locate and fix the water leak at the top of the hill, do not relate to "flood control measures" as prescribed in R.C. 2744.01(C)(2)(r).

{¶ 27} Furthermore, while R.C. 2744.01(C)(2)(r) includes flood control measures as a governmental function, it does not specify the absence of flood control measures as a governmental function. "[T]he absence of flood-control measures or planning could have been codified, but was not." *Seiler v. Norwalk,* 192 Ohio App.3d 331, 2011-Ohio-548, 949 N.E.2d 63, ¶ 103. *Compare* R.C. 2744.01(C)(2)(l) (including the *nonprovision* of a public improvement as a governmental function) *with* R.C. 2744.01(C)(2)(r) (including only flood control measures as a governmental function. Thus, Appellees' claims that the Village (1) failed to take any action whatsoever to repair the hill side and stabilize the hill prior to the first hill slide; (2) failed to take any action after the first hill slide to divert water and prevent future damages; and (3) failed to take any action after the second hill slide to prevent further damages, could not constitute "flood control measures," as prescribed in R.C. 2744.01(C)(2)(r). *Seiler* at ¶ 103. Instead, Appellees' allegations relate to the Village's proprietary function of maintaining and operating its water supply system. *E.g.*, *Columbia Gas of Ohio, Inc. v. Lucas Cty. Sanit. Engineers*, 6th Dist. Lucas No. L-15-1322, 2017-Ohio-4108, ¶ 8 (damages Columbia Gas sustained when city employees

punctured its gas line while responding to a suspected water main leak involved the alleged

negligent performance of a proprietary function).

{¶ 28} Importantly, the evidence in the record demonstrates a logical nexus between the

Village and its proprietary function of maintaining and operating a municipal corporation water

supply system and the resulting loss to Appellees' property. *Compare Calet v. East Ohio Gas*

*Co.*, 2017-Ohio-348, 83 N.E.3d 218, ¶¶ 15-16 (9th Dist.) (summary judgment improper where

plaintiff presented evidence that could support the conclusion that hole in sidewalk that caused

Plaintiff to fall existed for the purpose of allowing the City to engage in the proprietary function

of maintaining the City's water supply system as opposed to the condition of the sidewalk) *with*

*Plank v. City of Bellefontaine*, 3rd Dist. Logan No. 8-17-18, 2017-Ohio-8623, ¶ 16. (concluding

that unlike the plaintiff in *Calet*, there was "no evidence to support that the [City's] proprietary

function of maintaining and operating its water department (pursuant to R.C. 2744.01(G)(2)(c))

was the proximate cause of [plaintiff's] harm.")

{¶ 29} For instance, Appellees' neighbors, Bill and Rilla Smith, stated in their affidavits

that they noticed loss of water pressure in their home, which sits at the top of the hill, on

Thursday, October 20, 2011. Bill investigated and discovered water coming out of the ground, at

the top of the hill and on the side of the hill near the museum annex. Rilla's son notified the

Water Department of the issue; but no one investigated. The issue persisted the following day;

and after notifying the water department again, two workers, one of whom was Spaun, responded

to the scene.

{¶ 30} According to Bill, he tried to get the workers to investigate the water leak but was

told that "the leaking water line was [his] responsibility, not that of the Village." Deposition of

Bill Smith, p. 2. After inspecting the Smith's basement, Spaun told Bill that "he cracked the

meter and there was no water pressure on either side of the meter" and that "the blockage was somewhere in the lines of the house." *Id*. at p. 3. The workers left, without restoring water pressure to the Smith's home or addressing the water leak outside. Over the course of the weekend, they observed the water eat away at the hillside.

{¶ 31} David stated at his deposition that on Monday, October 24, 2011, he heard a noise coming from his backyard. He initially thought it was an animal; but upon inspection, he saw water, mud, and leaves sliding down the hill toward the museum annex. When workers arrived on scene, they began searching for the leak. Shortly thereafter, David overheard workers admit that they had accidently broken the water line with their backhoe. After that, David observed the water, mud, and debris changed course and begin flowing toward his house. Eventually, the debris—which included a large tree root—piled up against the rear of Appellees' home, causing severe damage. John Musser, the former Mayor of Pomeroy, investigated the incident and "learned that a Village pipeline in fact had been leaking on October 21, 2015 when Mr. Smith showed Village water department worker Shannon Spaun the place where water had been coming out of the ground and also told him about the lack of water pressure in the Smith residence." Affidavit of John Musser, p. 4.

{¶ 32} David stated that the following day, Paul Hellman, the Village Administrator, and Mitch Altier, an engineer, came to the site to discuss how to stabilize the hill. The engineer suggested possible ways to stabilize the hill and prevent further damage. For example, he suggested that the Village cut down trees, but leave the stumps, to minimize any damage. Within the next day or so, a tree service, paid for by the Village, came and cut down the top of one tree that was up against David's home. But based on the engineer's suggestions, Appellees paid the

company to remove additional trees. Despite these measures, the hill slid again on November 23, 2011, causing further damage to Appellees' home.

{¶ 33} Because Appellees' allegations concern the alleged negligent performance of a proprietary function and their evidence demonstrates a logical nexus between the Village and its proprietary function of maintaining and operating a municipal corporation water supply system and the resulting loss to Appellees' property, we conclude that the exception to immunity set forth in R.C. 2744.02(B)(2) applies.

2. Neither R.C. 2744.03(A)(3) Nor 2744.03(A)(5) Reinstate the Village's Immunity

{¶ 34} R.C. 2744.03(A) provides:

In a civil action brought against a political subdivision or an employee of a

political subdivision to recover damages for injury, death, or loss to person or

property allegedly caused by any act or omission in connection with a

governmental or proprietary function, the following defenses or immunities may

be asserted to establish nonliability:

* * *

(3) The political subdivision is immune from liability if the action or failure to act

by the employee involved that gave rise to the claim of liability was within the

discretion of the employee with respect to policy-making, planning, or

enforcement powers by virtue of the duties and responsibilities of the office or

position of the employee.

* * *

(5) The political subdivision is immune from liability if the injury, death, or loss

to person or property resulted from the exercise of judgment or discretion in

determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner. * * *.

{¶ 35} "[T]he focus of subsection (A)(3) is that the employee be engaged in policy-making, planning, or enforcement." *Elston*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 27. The focus of subsection (A)(5) is that the employee be engaged in "activities that involve weighing alternatives or making decisions that involve a "high degree of official judgment or discretion." *Leasure v. Adena Local School Dist.*, 2012-Ohio-3071, 973 N.E.2d 810, ¶ 31 (4th Dist.). "Routine decisions that require little judgment or discretion and that, instead, portray inadvertence, inattention, or unobservance do not create a defense to liability." *Tadijanac v. Jefferson Twp. Bellville Fire Dept.*, 5th Dist. Richland No. 14CA20, 2014-Ohio-4332, ¶ 48, citing *Frenz v. Springvale Golf Course & Ballroom,* 8th Dist. Cuyahoga No. 97593, 2012–Ohio–3568.

{¶ 36} Appellants argue that the Village's immunity is reinstated under R.C. 2744.03(A)(3) because the allegations against it, including "failure to install trenches and blocks, failure to stabilize the hill, remove trees, and failure to take other precautionary measures were decisions, pursuant to (A)(3), within the discretion and policy-making, planning and enforcement powers attendant to the offices held within the Village." Appellants' Brief, p. 16. This argument is without merit, however, as Appellees' allegations focus on the Village's alleged negligent maintenance of a specific portion of a water line as opposed to broader policy-making, planning, or enforcement concern. *E.g.*, *Calet*, 2017-Ohio-348, 83 N.E.3d 218, ¶ 17 (9th Dist.) (R.C. 2744.03(A)(3) argument meritless where plaintiff's theory of the case focused on the City's

alleged negligent maintenance of specific portion of its water system as opposed to broader policy making or planning concern.)

{¶ 37} Appellants also argue that the Village's decision "to install trenches and blocks, install new trees or remove trees, install hill stabilizers, or take other precautionary measures are all discretionary decisions, under R.C. 2744.03(A)(5)." Appellants' Brief, p. 16. This argument is also without merit, as the Village has provided no evidence of any specific decision that it made regarding these alleged failures that involved weighing alternatives or a high degree of official judgment or discretion. *E.g., East Ohio Gas Co. v. Akron*, 2012-Ohio-3780, 976 N.E.2d 276, ¶¶ 10-11 (9th Dist.) (supervisor's determination that late-night water main break should receive attention the next morning was an exercise of judgment or discretion in determining how to use personnel under R.C. 2744.03(A)(5) where supervisor determined that by the time he initiated overtime procedures to call in a foreman or inspector and assemble a crew, the break would receive no earlier attention than if the inspector on duty the following morning went to the scene immediately); *Giebner v. Summit County*, 9th Dist. Summit No. 20756, 2002 WL 388908, *5 (March 13, 2002) (political subdivision's immunity was not reinstated under R.C. 2744.03(A)(5) where plaintiff alleged that political subdivision negligently installed water valve box and political subdivision failed to point to portions of the record showing that the alleged manner in which the water valve box was installed was the result of it exercising its discretion on how to use supplies, materials, personnel, or other resources). *See generally Hall v. Fort Fry Local School District Board of Education*, 111 Ohio App.3d 690, 694-695, 676 N.E.2d 1241 (4th Dist.1996) (noting that a party raising an immunity defense must present evidence tending to prove the underlying facts upon which the defense is based).

{¶ 38} Because Appellants failed to present evidence of a discretionary decision as contemplated by R.C. 2744.03(A)(3) or 2744.03(A)(5), neither subsection reinstates the Village's immunity.

### C. Tort Liability for Political Subdivision Employees

{¶ 39} Appellees also assert claims against Spaun, in his individual capacity. Specifically, they allege that Spaun acted negligently, recklessly, wantonly and/or with malice or in bad faith in failing to discover or fix the water leak prior to the first hill slide.

{¶ 40} For claims against individual employees, the three-tiered analysis used to determine whether a political subdivision is immune is not used. *Cramer v. Auglaize Acres,* 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 17. Instead, R.C. 2744.03(A)(6) provides that an employee is personally immune from liability unless "(a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code." In these instances, allegations of negligence are insufficient to overcome the immunity granted to an employee of a political subdivision who acts within his or her official duties. *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994).

{¶ 41} During the proceedings below, the trial court failed to consider Spaun's individual immunity under R.C. 2744.03(A)(6). Specifically, the trial court failed to discuss whether Spaun's acts or omissions were manifestly outside the scope of his employment or official responsibilities; whether Spaun's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or whether civil liability was expressly imposed upon him under another section of the Revised Code. "While it is true that an appellate court reviews

a trial court's summary judgment decision de novo, we will not consider issues raised in summary judgment proceedings that the trial court failed to rule on." *Tree of Life Church v. Agnew*, 7th Dist. Belmont No. 12 BE 42, 2014-Ohio-878, ¶ 27, citing *Conny Farms, Ltd. v. Ball Resources, Inc.*, 7th Dist. Columbiana No. 09 CO 36, 2011-Ohio-5472, ¶ 15.

{¶ 42} Because the trial court did not consider Spaun's individual immunity under R.C. 2744.03(A)(6), we decline to do so for the first time on appeal. The trial court must evaluate whether Spaun is entitled to immunity under R.C. 2744.03(A)(6) before this Court will review the issue.

### IV. Conclusion

{¶ 43} Based on the foregoing, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED IN PART, REVERSED IN PART, AND THE CAUSE IS REMANDED. Costs shall be divided equally between the parties.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.: Concurs in Judgment and Opinion.
McFarland, J.: Dissents.

For the Court

By:  _____
          Marie Hoover, Presiding Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**