[Cite as *Wright v. Williamsport*, 2019-Ohio-2682.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| GARY WRIGHT, | : | |
| Plaintiff-Appellee, | : | Case No.   18CA14 |
| vs. | : | |
| VILLAGE OF WILLIAMSPORT, et al., | : | DECISION AND JUDGMENT ENTRY |
| Defendants-Appellants. | : | |

_____

APPEARANCES:

Warren M. Enders and Acacia B. Perko, Columbus, Ohio, for appellant.

Sean Harris, Columbus, Ohio, for appellees.

_____

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED:   6-21-19
ABELE, J.

{¶ 1}   This is an appeal from a Pickaway County Common Pleas Court judgment that denied summary judgment to the Village of Williamsport, defendant below and appellant herein.[1] The trial court determined that appellant is not immune from liability under R.C. Chapter 2744 for the negligence and loss-of-consortium claims asserted by Gary and Peggy Wright, plaintiffs below and appellees herein.   Appellant assigns the following error for review:

---

[1] We note that "when a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and thus is a final, appealable order pursuant to R.C. 2744.02(C)."  *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 27.  Accordingly, "[a]n order denying a motion for judgment on the pleadings filed by a political subdivision or its employees is a final, appealable order."  *Moss v. Lorain Cty. Bd. Of Mental Retardation*, 9th Dist. Lorain No. 09CA009550, 185 Ohio App.3d 395, 924 N.E.2d 401, 2009-Ohio-6931, ¶ 7, citing *Sullivan v. Anderson Twp.*, 122 Ohio St.3d 83, 2009-Ohio-1971, 909 N.E.2d 88, ¶ 3–4.

"THE TRIAL COURT ERRED BY DENYING POLITICAL SUBDIVISION IMMUNITY TO THE VILLAGE OF WILLIAMSPORT BECAUSE IT IS ENTITLED TO A GENERAL GRANT OF IMMUNITY, NONE OF THE EXCEPTIONS UNDER R.C. 2744.02(B) APPLY TO BAR IMMUNITY, AND, EVEN IF AN EXCEPTION APPLIES, AT LEAST ONE DEFENSE APPLIES TO ESTABLISH NON-LIABILITY."

{¶ 2} In July 2017, Williamsport Village Council member Pennie McCain spoke to Gary Wright about submitting a bid for repairing or replacing the roof of the village's maintenance barn. Wright subsequently visited the maintenance barn to examine the roof. As he examined the roof, Wright fell through a painted-over skylight and sustained serious injuries.

{¶ 3} Appellees filed a complaint against appellant [2] and alleged that appellant negligently and/or recklessly allowed a dangerous condition to exist at its maintenance barn. In particular, appellees claimed that the roof contained a fiberglass skylight painted the same color as the roof and looked identical to the roof's surface. Appellant denied liability and asserted it is statutorily immune from liability for appellees' claims.

{¶ 4} Appellant later requested summary judgment and asserted that because it is entitled to statutory immunity, it cannot be liable for appellees' claims. Appellant contended that it is entitled to the presumption of immunity and that none of the exceptions to immunity apply. Appellant asserted that R.C. 2744.02(B)(4) does not apply because appellees cannot establish that the injuries arose from a village employee's negligence. Appellant argued that Wright went onto the roof without informing any of the village's employees and that the village

---

[2] Appellees' complaint named additional parties as defendants, but appellees later dismissed their claims against the other parties.

did not have any chance to discuss the roof's condition before Wright walked on the roof. Appellant further claimed that even if one of its employees was negligent, the discretionary defense reinstates immunity.

{¶ 5} In their memorandum contra, appellees argued that the appellant breached its duty of reasonable care owed to business invitees. Appellees claimed that the village employees breached their duty to warn him of the hidden danger associated with the roof's painted-over skylights. Appellees disputed any argument that the dangers associated with the roof were open and obvious and alleged that the skylights were painted the same color as the roof and that it was impossible for Wright to have known that the roof contained skylights through which he might fall.

{¶ 6} In reply, appellant contended that the dangers associated with the roof were open and obvious and that it did not, therefore, have a duty to warn Wright of the open and obvious nature of the hazard. Appellant asserted that Wright knew that the roof needed to be "removed and replaced," and this knowledge shows that he was aware of the roof's dangerous condition. Appellant thus alleged that it did not have a duty to warn Wright of the roof's dangerous condition.

{¶ 7} To support their arguments, the parties referred to the depositions filed in the case. Wright stated in his deposition that village council member McCain informed him that the council was interested in obtaining bids to replace the maintenance barn's metal roof. Wright asked McCain if he needed to meet with, or speak to, anyone before looking at the roof, and she told him that he did not.

{¶ 8} Wright explained that when he examined the roof, he walked across the roof and

paid attention to where the nails were located.   He related that he normally tries to walk where the nails are located because that is "where the support of the structure is of the roof."   Wright stated that as he walked across the roof, he suddenly fell through the roof.   Wright also reported that he did not see any indications that the roof contained a skylight or other noticeable defects.

{¶ 9}   After reviewing the evidentiary materials, the trial court denied appellant's request for summary judgment.   This appeal followed.

{¶ 10} In its sole assignment of error, appellant asserts that the trial court incorrectly concluded that it is not entitled to immunity for appellees' claims.   Appellant argues that the evidence fails to suggest that any of its employees were negligent.   Specifically, appellant alleges that the evidence does not indicate that any of its employees had a duty to warn Wright about the dangers associated with examining a roof that needed to be repaired or replaced.   Instead, appellant claims, Wright's knowledge that the roof needed to be repaired or replaced placed him on notice that the roof might be in a dangerous condition.   Appellant thus argues that it did not have a duty to warn Wright of any further dangers associated with examining a roof in need of repair or replacement.

{¶ 11} Appellees, however, contend that the trial court correctly denied appellant's summary judgment request and that questions of fact remain as to whether any of appellant's employees were negligent.   Appellees thus claim that because genuine issues of material fact remain regarding appellant's employees' negligence, appellant is not entitled to a finding that it is statutorily immune from liability for appellees' injuries.

A

## STANDARD OF REVIEW

### 1

### Summary Judgment

{¶ 12} Initially, we note that appellate courts conduct a de novo review of trial court summary judgment decisions. *E.g., State ex rel. Novak , L.L.P. v. Ambrose*, — Ohio St.3d —, 2019-Ohio-1329, — N.E.3d —, ¶ 8; *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 13; *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, an appellate court must independently review the record to determine if summary judgment is appropriate and need not defer to the trial court's decision. *Grafton*, 77 Ohio St.3d at 105.

{¶ 13} Civ.R. 56(C) provides, in relevant part, as follows:

> * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶ 14} Accordingly, pursuant to Civ.R. 56, a trial court may not award summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) after viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. *Pelletier* at

¶ 13; *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12; *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

2

Immunity

{¶ 15} "Whether a party is entitled to immunity is a question of law properly determined by the court prior to trial pursuant to a motion for summary judgment." *Pelletier* at ¶ 12, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992); *see also Riscatti v. Prime Properties Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, 998 N.E.2d 437, ¶ 17 (noting the importance of deciding a political subdivision's entitlement to immunity before trial). Hence, appellate courts conduct a de novo review of a trial court's determination regarding political-subdivision immunity. *Pelletier* at ¶ 13, citing *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. De novo review means that we afford no deference to the trial court's decision and independently review whether the trial court correctly determined the political subdivision's immunity.

*Dolan v. Glouster*, 4th Dist. Athens Nos. 11CA18, 11CA19, 11CA33, 12CA1, 12CA6, 2014-Ohio-2017, 2014 WL 1901133, ¶ 106.

B

POLITICAL SUBDIVISION IMMUNITY

{¶ 16} R.C. Chapter 2744 establishes a three-step analysis for determining whether a political subdivision is immune from liability. *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 270, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 14. First, R.C. 2744.02(A)(1) sets forth the general rule that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to

person or property allegedly caused by any act or omission of the political subdivision * * * in connection with a governmental or proprietary function." *Accord Cramer*; *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7; *Harp v. Cleveland Hts.*, 87 Ohio St.3d 506, 509, 721 N.E.2d 1020 (2000). Accordingly, "[t]he starting point is the general rule that political subdivisions are immune from tort liability." *Shalkhauser v. Medina*, 148 Ohio App.3d 41, 772 N.E.2d 129, ¶ 14 (9th Dist. 2002).

{¶ **17**} Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1). *Cramer*; *Ryll v. Columbus Fireworks Display Co.*, 95 Ohio St.3d 467, 470, 2002-Ohio-2584, 769 N.E.2d 372, ¶ 25. Finally, R.C. 2744.03(A) sets forth several defenses that a political subdivision may assert if R.C. 2744.02(B) imposes liability. *Cramer*; *Colbert* at ¶ 9. The R.C. 2744.03(A) defenses then re-instate immunity.

{¶ **18**} In the case sub judice, appellees contend that even if appellant is entitled to the general grant of immunity, R.C. 2744.02(B)(4) removes appellant's immunity.

{¶ **19**} R.C. 2744.02(B)(4) provides:

> (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
> * * *
> (4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

(Emphasis added).

{¶ 20} The exception, therefore, applies upon proof that an injury was "(1) caused by employee negligence; (2) on the grounds or buildings used in connection with the performance of that governmental function; and (3) due to a physical defect on or within those grounds or buildings." *Gibbs v. Columbus, Metro. Hous. Auth.*, 10th Franklin No. 11AP–711, 2012–Ohio–2271, ¶ 10; *accord Dunfee v. Oberlin Sch. Dist.*, 9th Dist. Lorain No. 08CA009497, 2009–Ohio–3406, ¶ 13.

{¶ 21} In the case sub judice, appellant argues that appellees cannot establish that Wright's injuries resulted from employee negligence. Appellant claims that appellees cannot establish an essential element of a negligence cause of action - that appellant breached a duty owed to Wright.

{¶ 22} A successful negligence action requires a plaintiff to establish that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. *E.g., Texler v. D.O. Summers Cleaners*, 81 Ohio St.3d 677, 680, 693 N.E.2d 217 (1998); *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989); *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 472 N.E.2d 707 (1984).

{¶ 23} In a premises liability case, the duty that an owner or occupier owes to an individual who enters upon his land hinges on whether the individual is an invitee, a licensee, or a trespasser. *Combs v. Ohio Dept. of Nat. Resources, Div. of Parks & Recreation*, 146 Ohio St.3d 271, 2016-Ohio-1565, 55 N.E.3d 1073, ¶ 9, citing *Venglehardt v. Philipps*, 136 Ohio St. 73, 77, 23 N.E.2d 829 (1939); *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio

St.3d 312, 315, 662 N.E.2d 287 (1996); *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio

St.3d 414, 417, 644 N.E.2d 291 (1994).

{¶ 24} An invitee is an individual "who rightfully come[s] upon the premises of another

by invitation, express or implied, for some purpose which is beneficial to the owner." *Gladon*,

75 Ohio St.3d at 315, 662 N.E.2d at 291; *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68, 502 N.E.2d

611, 613 (1986); *Scheibel v. Lipton*, 156 Ohio St. 308, 102 N.E.2d 453 (1951), paragraph one of

the syllabus.

{¶ 25} "[A] licensee is one who stands in no contractual relationship to the owner or

occupier of [the] premises, but is permitted or tolerated thereon, expressly, impliedly, or

inferentially, merely for his own interest, convenience or pleasure or for that of a third person."

*Keesecker v. McKelvey*, 141 Ohio St. 162, 166, 47 N.E.2d 211 (1943); *see also Boydston v.*

*Norfolk Southern Corp.*, 73 Ohio App.3d 727, 730, 598 N.E.2d 171, 173 (1991), quoting

Restatement of the Law 2d, Torts (1967), Section 330 ("'A licensee is a person who is privileged

to enter or remain on land only by virtue of the possessor's consent.'").

{¶ 26} A trespasser is one "who, without express or implied authorization, invitation or

inducement, enters private premises purely for his own purposes or convenience." *McKinney v.*

*Hartz & Restle Realtors, Inc.*, 31 Ohio St.3d 244, 246, 510 N.E.2d 386, 388 (1987); *see also*

*Keesecker*, 141 Ohio St. at 166, 47 N.E.2d at 214 (stating that a trespasser is one who without

authorization "goes upon the private premises of another without invitation or inducement,

expressed or implied, but purely for his own purposes or convenience; and where no mutuality of

interest exists between him and the owner or occupant"); *Jeffers v. Olexo*, 43 Ohio St.3d 140,

145, 539 N.E.2d 614, 619 (1989).

{¶ 27} A landowner owes an invitee the duty to "'exercise ordinary care to render the premises reasonably safe.'" *Combs* at ¶ 9, quoting *Cincinnati Baseball Club Co. v. Eno*, 112 Ohio St. 175, 147 N.E. 86 (1925), paragraph one of the syllabus; *accord Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203, 480 N.E.2d 474 (1985). A landowner owes no duty to a licensee or trespasser "'except to refrain from wanton, willful or reckless misconduct which is likely to injure him.'" *Combs* at ¶ 9, quoting *Soles v. Ohio Edison Co.*, 144 Ohio St. 373, 59 N.E.2d 138 (1945), syllabus; *see also Scheibel v. Lipton*, 156 Ohio St. 308, 328–329, 102 N.E.2d 453 (1951) (discussing the duties owed to business visitors and social guests).

{¶ 28} In the case at bar, appellees allege that Wright was a business invitee. Appellant, however, disputes Wright's status as a business invitee and, instead, summarily claims that Wright was a trespasser. Nevertheless, appellant does not develop an argument that Wright was a trespasser. Moreover, for purposes of summary judgment, courts must construe the facts in a light most favorable to appellees. Thus, for purpose of our decision, we will presume that Wright was a business invitee. Accordingly, appellant owed Wright a duty "'to exercise ordinary care and to protect [him] by maintaining the premises in a safe condition.'" *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 10, quoting *Light*, 28 Ohio St.3d at 68.

{¶ 29} Although landowners must maintain the premises in a reasonably safe condition for its business invitees, landowners are not insurers of their invitees' safety. *Lang* at ¶ 11. A landowner must warn its invitees of latent or concealed dangers if the owner knows or has reason to know of the hidden dangers. *Jackson v. Kings Island*, 58 Ohio St.2d 357, 358, 390 N.E.2d 810 (1979). Invitees are expected, however, to take reasonable precautions to avoid dangers that

are patent or obvious. *Brinkman v. Ross*, 68 Ohio St.3d 82, 84, 623 N.E.2d 1175 (1993); *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph one of the syllabus. Consequently, when "a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, syllabus; *Sidle*, paragraph one of the syllabus. The underlying rationale is that "the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Armstrong* at ¶ 5. "The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Id.* at ¶ 13. "Open and obvious dangers are not hidden, are not concealed from view, and are discoverable upon ordinary inspection." *Zambo v. Tom–Car Foods*, 9th Dist. Lorain No. 09CA009619, 2010–Ohio–474, ¶ 8. "The determinative issue is whether the condition is observable." *Kirksey v. Summit Cty. Parking Deck*, 9th Dist. Summit No. 22755, 2005–Ohio–6742, ¶ 11.

{¶ 30} Moreover, courts that review whether a danger is open and obvious employ "an objective, not subjective, standard." *Goode v. Mt. Gillion Baptist Church*, 8th Dist. Cuyahoga No. 87876, 2006-Ohio-6936, at ¶ 25; *accord Ligon v. Winton Woods Park*, 1st Dist. Hamilton No. C-180073, 2019-Ohio-1217, 2019 WL 1474210, ¶ 9; *Wyatt v. Roses Run Country Club*, 2018-Ohio-4093, 119 N.E.3d 1006 (9th Dist.), ¶ 17; *Galligan-Dent v. Tecumseh Outdoor Drama*, 4th Dist. Ross No. 16CA3534, 2016-Ohio-7907, 2016 WL 6947889, ¶ 21. Thus, simply

because a particular invitee may have been unaware of the danger does not mean that the danger was undiscoverable. *Goode* at ¶ 25; *accord Williams v. Strand Theatre & Cultural Arts Assn., Inc.*, 5th Dist. Delaware No. 18 CAE 06 0042, 2019-Ohio-95, ¶ 24. Rather, the question is whether a reasonable invitee would have discovered the hazard. *Galligan-Dent* at ¶ 21. Thus, in the case sub judice, we must use an objective standard to determine whether the danger associated with the roof was open and obvious. *Id.*

{¶ 31} In most situations, whether a danger is open and obvious presents a question of law. *See Hallowell v. Athens*, 4th Dist. Athens No. 03CA29, 2004-Ohio-4257, at ¶ 21; *see also Nageotte v. Cafaro Co.*, 6th Dist. Erie No. E-04-15, 2005-Ohio-2098. Under certain circumstances, however, disputed facts may exist regarding the openness and obviousness of a danger, thus rendering it a question of fact. As the court explained in *Klauss v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga No. 84799, 2005-Ohio-1306, ¶ 17-18:

> Although the Supreme Court of Ohio has held that whether a duty exists is a question of law for the court to decide, the issue of whether a hazardous condition is open and obvious may present a genuine issue of fact for a jury to review.
> Where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious may be decided by the court as a matter of law. *Anderson v. Hedstrom Corp.* (S.D.N.Y.1999), 76 F.Supp.2d 422, 441; *Vella v. Hyatt Corp.* (S.D. Mich. 2001), 166 F.Supp.2d 1193, 1198; *see, also, Parsons v. Lawson Co.* (1989), 57 Ohio App.3d 49, 566 N.E.2d 698.
> However, where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine. *Carpenter v. Marc Glassman, Inc.* (1997), 124 Ohio App.3d 236, 240, 705 N.E.2d 1281; *Henry v. Dollar General Store*, Greene App. No.2002-CA-47, 2003-Ohio-206; *Bumgarner v. Wal-Mart Stores, Inc.*, Miami App. No.2002-CA-11, 2002-Ohio-6856.

*See also Oliver v. Leaf and Vine*, 2nd Dist. Miami No.2004CA35, 2005-Ohio-1910, at ¶ 31 ("'The determination of whether a hazard is latent or obvious depends upon the particular circumstances

surrounding the hazard.  In a given situation, factors may include lighting conditions, weather, time of day, traffic patterns, or activities engaged in at the time.'") (internal quotations omitted).

**{¶ 32}** In the case sub judice, appellant contends that the hazard associated with examining a roof in need of repair or replacement was open and obvious to Wright and that it did not, therefore, have a duty to warn him of the condition of the roof.

**{¶ 33}** Appellees, on the other hand, assert that even if Wright was aware of the general risks inherent in examining a roof in need of repair and replacement, he did not know that the roof contained fiberglass skylights painted to match the surrounding metal roof material. Appellees basically contend that the fiberglass skylights posed a danger beyond those a reasonable roofing contractor would expect to encounter when examining a roof in need of repair or replacement.  Appellees thus assert that because Wright did not discover, and could not have discovered upon reasonable inspection, that the roof contained fiberglass skylights, appellant possessed a duty to warn him to be aware and avoid the fiberglass skylights.

**{¶ 34}** A few cases have discussed whether skylights constitute open and obvious hazards.  In *Shuman v. Detroit Diesel*, 5th Dist. Stark No. 1999CA00101, 2000 WL 1632, *3, the plaintiff tripped and fell through a skylight while working on a roofing project.  The plaintiff had worked on the roof for two or three days before his fall and admitted that "he was well aware of the skylights and knew it would be dangerous to stand or jump on the skylights."  *Id.*  Under those circumstances, the court concluded that "the open and obvious nature of the skylight remove[d] any duty to warn."  *Id.*

**{¶ 35}** A New Jersey court likewise concluded that the danger of falling through a skylight while working on a roof constituted an open and obvious danger.  *Bussie v. Bloom Org.*,

2007 WL 1425493, (N.J. App. May 16, 2007), *3. In that case, the plaintiff had been installing a new roof when he fell through a skylight and sustained fatal injuries. The court refused to impose liability upon the premises owner and explained that "the dangers inherent in a flat roof or any roof for that matter, including the risk of a fall, and the risks associated with a roof studded with skylights are inherent in the job of a roofer." *Id.* Importantly, the court noted that the skylights on the roof "were not flush with the roof. To the contrary, each is domed and clearly visible to anyone on this roof." *Id.* The court thus concluded that "the danger posed by the skylights was open and obvious." *Id.*

{¶ 36} The *Bussie* court contrasted the clear visibility of the skylights with the lack of visibility of a wire located on a roof considered in a prior case, *Zentz v. Toop*, 92 N.J.Super. 105 (App.Div.1966), aff'd, 50 N.J. 250 (1967). In *Zentz*, the plaintiff fell from the roof after tripping over a wire used to stabilize air-conditioning units. *Id.* at 108. The court determined that the property owner's negligence was a jury question when the evidence failed to indicate that the plaintiff had observed the wire or had knowledge of the wire. *Id.* at 115. Additionally, the evidence showed that "the wire was the same color as the roof material and there was no evidence that anything had been done to enhance the visibility of the wire." *Bussie* at *3, citing *Zentz* at 114.

{¶ 37} Other courts have also examined the inherent risks associated with roof-repair and whether those inherent risks constitute open and obvious dangers that obviate a landowner's duty to warn. One case involved "a century old barn, whose stability and soundness concerned appellant enough to conduct an inspection of the roof and its understructure/underlayment." *Uhl v. Thomas*, 12th Dist. Butler No. CA2008-06-131, 2009-Ohio-196, 2009 WL 119844, ¶ 17. In

*Uhl*, the plaintiff recognized the danger of falling through the barn roof. The plaintiff testified that he inspected the roof to ensure that it was solid, "because if it isn't, you can go through it real quick." The court concluded that because the plaintiff recognized the open and obvious danger of falling through the roof, the landowner did not owe him a duty.

{¶ 38} Another case involved a plaintiff who attempted to access a roof by standing "on top of a thin wrought iron railing and climb[ing] over the edge of a brick party wall covered with ceramic cap tile." *Kraner v. Legg*, 3rd Dist. Mercer No. 10-2000-04, 2000-Ohio-1907, 2000 WL 924809, *1. The court concluded "that any reasonable person would consider the risk and danger involved with venturing onto a roof, especially in the manner employed by the [plaintiff] in this case, to be so open and obvious so as to render any warning from the property owner pointless." *Id.*

{¶ 39} Similarly, the Tenth District Court of Appeals concluded that "the edge of a roof presents" an "'open and obvious' danger to any reasonable person." *Prest v. Delta Delta Delta Sorority*, 115 Ohio App.3d 712, 715, 686 N.E.2d 293 (10th Dist.1996).

{¶ 40} In the case sub judice, we believe that the facts most closely align with those discussed in *Zentz*. As in *Zentz*, the evidence in the case at bar suggests that the skylights, like the wire, were concealed and not readily discernible to a reasonable person. The photographs submitted along with the depositions depict a solid colored roof with no readily discernible boundary lines that would alert a reasonable person to the presence of a fiberglass skylight. Nothing suggests that appellant took steps to differentiate the fiberglass skylights from the rest of the roof. In fact, it appears that appellant did the opposite and took steps to make the fiberglass skylights appear to be a seamless part of the roof.

{¶ 41} Furthermore, unlike the skylights in *Shuman* and *Bussie*, the evidence does not indicate that the skylight was domed and readily observable. Instead, the skylight appears to have been flush with the roof.

{¶ 42} Furthermore, even if Wright knew that examining a roof in need of repair or replacement posed a general danger of falling from the edge or through deteriorating substrate, he did not know that examining appellant's roof would pose a danger of falling through a hidden skylight. Wright explained how he walked across the roof in order to step on the nailheads, which, he explained, is where the support structure usually will be found. Had he known that the roof contained a fiberglass skylight, he may have exercised additional precautions. Thus, under the circumstances present in the case at bar, we agree with appellees that the danger of falling through the skylight in the roof of appellant's maintenance barn was not open and obvious. We therefore disagree with appellant that its employees did not have a duty to warn Mr. Wright of the danger of falling through a concealed skylight. Consequently, we disagree with appellant that appellees are unable to establish an essential element of their negligence claim. Thus, the trial court properly denied appellant's summary judgment on the basis that appellant is statutorily immune from liability under R.C. 2744.02(B)(4).

{¶ 43} Appellant next argues that even if R.C. 2744.02(B)(4) removes its general grant of immunity, R.C. 2744.03(A)(3) or (5) reinstates it.

{¶ 44} R.C. 2744.03(A)(3) or (5) state:

> (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

* * *

(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
* * *

(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

**{¶ 45}** The R.C. 2744.03(A)(3) defense requires a court to determine "whether there are any policy-making, planning, or enforcement powers involved, and then look to see whether the political subdivision's employee had discretion with respect to those powers by virtue of that employee's office or position." *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 27. "[T]he focus of subsection (A)(3) is that the employee be engaged in policy-making, planning, or enforcement." *Id.* "[A] political subdivision may assert the immunity defense when an employee who has the duty and responsibility for policy-making, planning, or enforcement by virtue of office or position actually exercises discretion with respect to that power." A political subdivision is entitled to immunity under R.C. 2744.03(A)(3), "even if the discretionary actions were done recklessly or with bad faith or malice." *Id.*

**{¶ 46}** Under R.C. 2744.03(A)(5), political subdivisions are not liable for injuries resulting from the exercise of judgment or discretion in determining how to use personnel and resources. *Franks v. Lopez*, 69 Ohio St.3d 345, 347-348, 632 N.E.2d 502 (1994). The R.C. 2744.03(A)(5) discretionary defense applies only to "the broad type of discretion involving

public policy made with 'the creative exercise of political judgment.'" *Kenko Corp. v. Cincinnati*, 1ˢᵗ Dist. Hamilton No. C-080246, 2009-Ohio-4189, at ¶ 35, quoting *McVey v. Cincinnati*, 109 Ohio App.3d 159, 163, 671 N.E.2d 1288 (1ˢᵗ Dist. 1995). Thus, the "exercise of judgment and discretion" contemplated by R.C. 2744.03(A)(5) does not apply to every decision that a political subdivision makes. *Id.* at 35, 671 N.E.2d 1288. As we explained in *Hall v. Fort Frye Loc. Sch. Dist. Bd. Of Educ.*, 111 Ohio App.3d 690, 699, 676 N.E.2d 1241 (4ᵗʰ Dist. 1996):

> Immunity operates to protect political subdivisions from liability based upon discretionary judgments concerning the allocation of scarce resources; it is not intended to protect conduct which requires very little or independent judgment. The law of immunity is designed to foster freedom and discretion in the development of public policy while still ensuring that implementation of political subdivision responsibilities is conducted in a reasonable manner.

{¶ 47} Thus, the R.C. 2744.03(A)(3) and (A)(5) defenses are meant to protect decisions involving the exercise of discretion and judgment, not decisions requiring little discretion or independent judgment. Accordingly, a "routine maintenance decision requiring little judgment or discretion" does not fall within the purview of R.C. 2744.03(A)(3) and (A)(5). *Perkins v. Norwood City Schools*, 85 Ohio St.3d 191, 193, 707 N.E.2d 868 (1999) (stating that school principal's decision regarding whom to employ to repair a leaking drinking fountain does not constitute an exercise of judgment or discretion in determining how to use personnel and resources within the meaning of R.C. 2744.03(A)(5), but instead is a routine maintenance decision requiring little judgment or discretion).

{¶ 48} Our decision in *Frederick v. Vinton Cty. Bd. of Edn.*, 4th Dist. Vinton No.

03CA579, 2004-Ohio-550, 2004 WL 232129, aptly illustrates the foregoing principles. In *Frederick*, we reviewed whether R.C. 2744.03(A)(3) or 2744.03(A)(5) applied to the placement and maintenance of a tree. In *Frederick*, a young girl died during school recess after she fell from a tree. The plaintiff alleged that the school had negligently maintained the tree and the area surrounding the tree by failing to trim low-hanging branches that children could reach or by failing to take other measures to ensure that the tree did not pose a safety hazard.

{¶ 49} In determining whether R.C. 2744.03(A)(3) or 2744.03(A)(5) applied to the plaintiff's negligent-maintenance claim, we reasoned that "decisions in this case relating to whether to have trees on the playground, how many trees, or where they should be placed, are discretionary decisions. * * * However, the School's duty to ensure that the tree, like any other fixture on the playground, did not pose a safety hazard is a maintenance issue." *Id.* at ¶ 38. We thus concluded that a genuine issue of material fact existed with respect to whether the school had negligently maintained the playground.

{¶ 50} Likewise, in *Hall* we held that the maintenance of a school's irrigation system does not involve the exercise of judgment or discretion. In that case, the plaintiff, a football player, suffered an injury during football practice when he stepped on an exposed sprinkler head located on the high school's practice field. The trial court granted summary judgment to the school on the basis of statutory immunity. We reversed and held that the maintenance of the high school practice field does not require the exercise of judgment or discretion as contemplated in R.C. 2744.03(A)(5). We held that the school's "initial decision * * * to purchase and install the irrigation system clearly involved the exercise of protected judgment or discretion, for which [the school] is entitled to immunity * * *." *Id.* at 700, 676 N.E.2d 1241. We further held,

however, that "the maintenance of the school's irrigation system * * * is a totally separate matter that does not involve the exercise of such judgment or discretion. The decision to allocate resources, i.e., 'how to use, equipment * * * facilities,' has been made and is immunized. However, once that policy is put into effect, [the school's] maintenance procedures must be performed in a reasonably safe manner." We held "as a matter of law that the maintenance of a political subdivision's property, as opposed to decisions concerning the acquisition and utilization of such property, do not involve a sufficient amount of budgeting, management, or planning to bring such decisions into the purview of R.C. 2744.03(A)(3) or (5)." *Id.* at 702, 676 N.E.2d 1241; *Malone v. Chillicothe*, 4th Dist. Ross App. No. 05CA2869, 2006-Ohio-3258 (stating that R.C. 2744.03(A)(5) does not insulate a political subdivision from liability for damages stemming from the negligent maintenance of its buildings or grounds).

{¶ 51} In the case at bar, we do not agree that maintaining the barn roof in a safe condition for inspection involved the type of discretionary or policy-making decisions immune from liability. Instead, like the decision to trim or not to trim a tree, the decision whether to paint over the skylights to match the surrounding roof or to ensure that the skylights remained visible involved a routine maintenance decision. *State ex rel. Deem v. Village of Pomeroy*, 4th Dist. No. 17CA3, 2018-Ohio-1120, 109 N.E.3d 30, 2018 WL 1470699, ¶ 36 (explaining that decision whether to maintain property in a safe condition does not involve policy-making or planning).

{¶ 52} Appellant nevertheless claims that Wright's injury resulted from its alleged discretionary decision whether to repair or replace the roof, not from a routine maintenance decision. We recognize that Wright's injury occurred during the course of appellant's

investigation into whether it should repair or replace the roof. During this time period, Wright sustained injuries, not as a result of appellant's decision whether to repair or to replace the roof, but rather as a result of appellant's failure to ensure that an individual examining the roof received adequate warning that the roof contained painted-over fiberglass skylights. In sum, Wright's injury did not result from an act that involved "policy-making, planning, or enforcement powers" or that involved "'a high degree of official judgment or discretion.'" *Elston* at ¶ 30, quoting *Reynolds v. State, Div. of Parole & Community Services*, 14 Ohio St.3d 68, 471 N.E.2d 776, 14 O.B.R. 506 (1984), paragraph one of the syllabus.

{¶ 53} We therefore disagree with appellant that the trial court erred by overruling its summary judgment motion on the basis of statutory immunity.

{¶ 54} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellees recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## **NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.